## H. M. CUTSHAW v. T. H. CAMPBELL, et al.

Eastern Section.   October 31, 1925.

No petition for Certiorari was filed.

1. **Contracts. Where contract provides for an extension of time, the terms of the contract must be followed.**

In an action to recover the possession of a theater where plaintiff was claiming possession under a certain contract and the evidence showed that the contract provided upon ·giving written notice the contract might be extended for a term of five years and that in any year thereafter upon giving notice the contract might be terminated and the evidence further showed that the plaintiff had written a letter requesting the contract to be extended for but one year, held that this was not in compliance with the provisions of the contract and did not constitute an exercise of the option. It was simply a new offer which was never accepted by the other party.

2. **Contracts. Where a contract with a partnership gave an option to extend the contract held either partner might exercise the option.**

Where partners had a theater leased for one year with an option in their contract to extend the lease for five years held, that either partner might exercise the option in behalf of the partnership and it would be binding upon the other party.

3. **Partnership. Contracts. Where partners have a contract with an option for extension, upon the dissolution of the partnership the option is destroyed.**

In an action to recover possession of a theater where partners had a lease on the building with an option to extend the lease, held that upon the dissolution of the partnership neither one of the partners could exercise the option and extend the lease.

4. **Contracts. Partners may deal with a contract as between themselves as they choose but both remain liable on the contract.**

Partners holding a contract may dissolve the partnership and either partner may take the contract as part of the assets and the other party to the contract can not object but this does not relieve either partner of liability on the contract.

5. **Forcible entry and detainer. Party in possession may maintain action of forcible entry and detainer against one forcibly ousting him regardless of his right to possession.**

In an action to recover the possession of a theater where the plaintiff was in possession and the defendant had forced his way into the theater and changed the locks and taken possession thereof, held that the plaintiff's action for forcible entry and detainer would lie, although the defendant was entitled to possession if he had proceeded according to law.

6. **Forcible entry and detainer. Damages. One not having a right to possession of property can recover only nominal damages for unlawful dispossession.**

Where the plaintiff was forcibly ejected from property and the defendant was entitled to possession if he had proceeded lawfully, held that the plaintiff could recover only nominal damages for the unlawful dispossession.

Appeal from Chancery Court, Cocke County; Hon. M. H. Gamble, Chancellor.

Modified and affirmed.

Chas. C. McNabb and W. D. McSween, of Newport, and J. E. Biddle, of Greeneville, for appellant.

George W. Gorrell, and W. O. Mims, of Newport, for appellee.

SNODGRASS, J. The bill in this cause was filed by the plaintiff to recover and be restored to the possession of what is described as the Gay Theatre and its contents, in the town of Newport, Tennessee. The bill alleges that the defendant Campbell is the owner, or acting for the owner, of all machines, fixtures, paraphernalia and equipment of the said moving picture show; that as such owner, or acting for such owner, the defendant did on the 10th day of July, 1922, lease to the complainant, Howard Cutshaw. with one W. G. Carter, the said building, fixtures, equipment, chairs and all appurtenances thereunto belonging for a period of one year, with the privilege of extension for an additional period, all of which it is averred is shown by the lease agreement entered into between the parties, the original of which lease. agreement was attached and made a part of the bill.

It was further averred that he succeeded to all the rights and privileges of the said W. G. Carter in said lease, and that for several months last past he has been in possession and operating said show with the full knowledge and consent of the defendant herein, and with his acquiescence; that the defendant Campbell had, some thirty days prior to the bill, notwithstanding said lease and the fact that the complainant had been and was still in possession of said premises and operating said show, notified complainant to vacate said premises on October 1, 1923, for some cause unknown to complainant, which notice was not complied with; that since July 17, the date of the expiration of said lease on its face, and since complainant acquired all the right and interest of the said Carter in said lease, he had promptly paid in advance the monthly rental as contracted for said premises; that defendant had accepted said monthly rental up until the 17th day of September, 1923, on which date he tendered to the defendant Campbell in lawful money of the United States the rent for the ensuing month, which the said Campbell refused to take. He avers that if the said Campbell had any grounds upon which to rescind the said lease for any breach, that by receiving said rent after the expiration of the term of said lease, and after complainant had acquired the interest of said Carter therein, that he thereby waived and lost all such rights, and that he is now estopped to set up the same; that complainant avers and relies upon said acts of said Campbell as constituting a complete waiver of any grounds that he

might otherwise have had to insist upon a breach of said lease contract.

It is further averred that on May 17, 1923, complainant gave written notice as provided in said lease contract that he would exercise the option permitted of extending the lease for an additional year from July 17, 1922, and a copy of said notice, averred to be a true copy, is filed as Exhibit "B" to the bill; that on the 1st day of October, 1923, notwithstanding said lease and complainants' possession of said premises under the same, the defendant Campbell has undertaken to forcibly take possession of said premises, gone upon the same and forced an entrance into the theatre proper of said moving picture show, and also into the private office and other rooms of this complainant, and has notified complainant to get out, both himself and his employee or employees, and has by force committed other acts of trespass, and is still committing other acts of trespass upon the premises, all of which will do irreparable damage to complainant, if not stopped. He avers that the acts of defendant in going into said theatre and premises and forcing an entrance thereto in the manner in which he has, was a high-handed outrage on complainant's rights of use and possession; that the act is yet warm, and complainant is advised under the facts above set out that he is entitled to a mandatory injunction restoring him to possession, and requiring that the building and premises be restored to the same condition that they were in when defendant so forced an entrance; and complainant avers that, while doing complainant great benefit, that the same will do defendant little or no injury, and that unless mandatory injunction is granted that complainant will suffer great and irreparable injury and damage.

The prayer was that the defendant be made party by the issuance and service of process requiring him to appear and answer the bill, but not under oath; that a mandatory injunction issue restraining and inhibiting the defendant from in any way interfering with the use, operation and possession of said picture show and premises by the complainant to replace all doors or other parts of said theatre to the same condition in which they were in when defendant forcibly entered upon the same, and for general and appropriate relief.

An amendment was had to the original bill on October 1st, which averred that on this the 1st day of October, 1923, he filed his original bill in this Honorable Court against the defendant T. H. Campbell, alleging, among other things, that the said T. H. Campbell as the owner of, or as acting for the owners of a certain building or premises situated in the town of Newport, Tennessee, together with the picture show equipment, chairs, etc., did on the 17th day of July, 1922, lease to the said Cutshaw and W. G. Carter the said premises

and equipment for the term of one year, with the privilege of extension for an additional year or years, all as set out in said lease attached to and made a part of said original bill. That he had succeeded to all the rights and privileges of said Carter in and to and under said lease, and had given the notice required in same relating to the said extension of time, and that while in the lawful possession of said building and premises the said T. H. Campbell did on the 1st day of October, 1923, enter upon and attempt to take possession of said premises, equipment and other property pertaining to said picture show; that in said original bill complainant prayed that an injunction issue inhibiting and restraining the said T. H. Campbell from trespassing upon said premises, or from in any way interferring with complainant in the use and possession of said premises, and commanding him to restore said building to the condition it was in, and to at once restore complainant to the possession of said premises, equipment, etc.; all of which allegations and prayers it was averred will fully appear by reference to said original bill.

And now comes complainant and amends his bill in the following respects and for the following reasons:

That he filed on this the 1st day of October, 1923, his original bill, and that process and injunction prayed for therein was issued by the clerk and went into the hands of the Sheriff to be served, and that when the sheriff served the same upon Campbell at about 2 P. M. this date, that the said Campbell claimed that he was not in possession of said premises, but that he had turned the same over to one named W. W. White, and that the said White claimed to have possession of said premises through some kind of lease or arrangement from Campbell. That the said Campbell informed the sheriff that he would not turn over the premises or obey the order of the fiat and injunction, because he no longer has possession of the same, but that they were in the possession of said White. That complainant shows that by reason of the allegations and facts set out in the original bill, the said White, if he was an innocent party to the transaction, and without knowledge of the rights of complainant, would have no right to the possession of the premises, for the reasons set out by the complainant in the original bill. That, however, your complainant shows that the said White was fully cognizant of the rights of complainant in the matter, and knew all about the lease that he had and his right to the exclusive and continuous possession of said premises, and knew that he had no right whatever to accept the possession of same from the said Campbell, because said Campbell had no right to give possession of premises to which he was in no wise entitled himself. That, however, as both said Campbell and White are claiming that White has the right to possession, your complainant thinks possibly it would be proper that said White be

made a party hereto, in order that there can be no question about having the proper parties before the court.

Complainant averred that this unlawful and unwarranted interference with his possession and rights is a great loss, damage and injury to him; that as stated in his original bill the said defendant just took possession by force, without asking the aid of any court whatever, and that they have taken charge of the theatre building and equipment thereof, and will not permit or allow this complainant to use the same, or have anything to do with the same; that they have taken off the locks that were on the building and placed new locks on the doors, so that complainant can not have any access to the building whatever; that he shows and avers he had advertised both afternoon and night performances for today, and all the days of this week, and has already obtained, at great expense, films and equipment necessary for running this picture show during the present week; that this is the week of the Appalachian Fair in Newport, when large crowds will be present and in all probability the week's business will be very profitable, and that unless the parties are prohibited and restrained from interfering with him in his said business he will suffer great and irreparable loss and injury. He showed that no answer or other defense had been made by the defendants in the case, and prayed that said W. W. White be made party defendant as well as the said Campbell, and that by apt process duly issued and served requiring him to appear and answer fully the allegations of the bill, but waived their oath. He prayed that an injunction issue against said Campbell and White, their agents, solicitors, attorneys, lessees, or anyone acting through or under them, prohibiting interference with complainant in the use of said building and theatre equipment set out and described in the said lease filed as exhibit to the original bill; that they be required to at once turn the keys of and the possession of the building and equipment over the complainant, and to the place the same in the same condition as it was before they unlawfully took charge of same and took off the locks; that both the said defendants be prohibited from trespassing upon said premises or in any way whatever interfering with the possession and rights of the complainant. He averred that the said defendant White was now in Cocke county, Tennessee, but that complainant was advised he probably would return to Jefferson county, and he prays that process issue to Jefferson county if he does so. The amended bill prayed also for appropriate and general relief.

An injunction was also directed to issue by a fiat obtained in accordance with the prayer of said amended bill.

On October 2, 1923, the answer and cross bill of the defendant T. H. Campbell was filed, in which it was stated that the defendant answering, insofar as he was advised it was material for him to answer, said:

That the Gay Theatre is a domestic corporation, chartered under the laws of Tennessee, and that respondent was the owner of the stock of said corporation; that on the 10th day of July, 1922, he executed to Carter and Cutshaw the lease exhibited to the original bill, which was executed in duplicate by the parties, and that respondent herewith files his copy of said lease as Exhibit No 1 to his answer and cross bill. That respondent was induced to make said lease to said Carter and Cutshaw solely upon the ground that said Carter was and is a solvent and reliable man, while Cutshaw was not then solvent, and is now utterly insolvent, passing some strictures upon the complainant which is not necessary to repeat.

The answer averred that the facts in regard to the transaction are as follows: That on the 17th day of May, 1923, respondent received the following letter, postmarked Greeneville, Tennessee:

"Mr. T. H. Campbell,

"Newport, Tennessee.

"Dear Sid:—

"Please be advised of our desire to continue the present lease on the Gay Theatre for the period of one year, commencing July 17th, 1923, as stipulated in said lease.

"Yours truly

"The Princess Amusement Co.

"By Carter & Cutshaw.

"Per H. M. Cutshaw."

It was averred in the answer that this letter purports to have been written from Greenville, Tennessee, but respondent avers that it was written at Newport, Tenn., by the said H. M. Cutshaw; that after its receipt respondent saw Mr. Carter and showed said letter to him, and that Carter stated to respondent that he knew absolutely nothing about it; that said letter, with the envelope in which it was received from the post office is herewith filed as Exhibit "B" to the answer and cross bill. He averred that immediately after the conversation in which Carter spoke about the letter above referred to, that respondent received the following letter from Mr. Carter, at Greeneville, Tenn., dated June 14, 1923, as follows:

"Mr. T. H. Campbell,

"Newport, Tenn.

"Dear Mr. Campbell:

"I was over in your town on Tuesday to see you, but failed to do so. What I wanted to see you about is this: Mr. Cutshaw and myself have mutually dissolved partnership in the theatre business. I have taken Jefferson City, or rather forced to, and Mr. Cutshaw wants to still continue to operate your house. I have turned him over the lease provided you can make a deal. In other words, I take this method of notifying you that I wish

to discontinue my interest in said lease, this being the thirty days notice prior to expiration of the first year of the lease as per agreement in lease. Mr. Campbell, would be glad if you will run a little dissolution notice in your paper. You know just how they ought to read.

"Very truly,

"W. G. Carter."

That said letter is filed as Exhibit "C" to the answer and cross bill. The answering continuing: that it will be seen that by written notice as provided for in page 2 of said lease, Mr. Carter, the solvent partner, elected to terminate the lease as provided for by said contract, and the lease was terminated, the answer averring that it was so treated by all the parties, even the plaintiff Cutshaw. That as before stated respondent executed this lease because said W. G. Carter was a solvent man, and upon the dissolution of the partnership of Carter and Cutshaw, and upon Carter's notice to respondent that he would terminate said lease, said lease was terminated, and the said Carter had no interest in the same to assign to the said Cutshaw, and that neither did the said Carter assign or attempt to assign any interest he had in said lease to said Cutshaw. That had said Carter done so, such action would have been void, because it is expressly stipulated in said lease that the same could not be transferred without the consent of this respondent in writing, and that no such consent was ever given. Respondent denied that the complainant succeeded to any rights said Carter might have had in said contract, as by the express declaration of said contract he relieved himself of any liability under said lease by terminating same as provided for upon its face. It was averred that from and after June 14, 1923, the date said Carter notified respondent of the termination of said lease, and of the dissolution of the partnership of said Carter and Cutshaw, that said Cutshaw treated said lease as terminated, and that he came to see respondent and sought to make another arrangement about it, and respondent told him that he would make an arrangement with him if he (Cutshaw) would make and give a good and solvent bond to secure and make safe the payment of said rents, which said Cutshaw later on admitted that he was unable to do; that in the meantime Mr. Carter came to Newport and told this respondent that he would have absolutely nothing to do with the Gay Theatre contract with Cutshaw in any way, and would not be liable therefor; that pending these matters respondent consented that complainant might use the house for thirty days at a time, at the will of this respondent, until he rented the premises to someone else, or made some satisfactory arrangement for it; that complainant paid the monthly rental as a tenant at will of this respondent, and not as a lessee of the building, and respondent denies positively that there is any estoppel against

him. That in addition to the termination of said lease and the dissolution of the partnership of Carter and Cutshaw on September 1, 1923, respondent gave notice to said Cutshaw that he must vacate and surrender possession of the premises on and after October 1, 1923. What was averred to be a true copy of said notice was filed as Exhibit "D" to the answer and cross bill.

It was stated in the answer that it was true that complainant did tender him the money for thirty days rent on or about September 15, 1923, which this respondent declined to take, because the said Cutshaw knew that respondent was renting the premises to another party, a rental contract which was to take effect October 1, 1923; that at this time respondent told Cutshaw that he would give him the rents due for the one-half month in September, and also the programs used for that time, which it was averred said Cutshaw expressed himself as entirely satisfied with.

That respondent now shows that on the — day of September, 1923, he did by written contract lease said building to Walter and Grace White for a period of five years, possession of said building to be given October 1, 1923. That on the morning of October 1, 1923, said Cutshaw declined or refused to surrender the keys of the building to this respondent, as he had agreed to do, whereupon this respondent removed the old locks and placed new ones upon the doors, and place the said Walter and Grace White in possession of the premises under the terms of this lease with them; that at the time the original bill in this cause was drafted, and at the time said injunction issued thereon, and at the time said bill was filed, the said Walter and Grace White were, and now are, in the possession of said building under the lease aforesaid, and this respondent was not in possession of said building at the time said injunction was granted, and is not in possession of same. That respondent had no notice of the granting of this injunction or that such had been applied for until the same was served upon him by the sheriff about 2 P. M. on October 1, 1923; that he had then been out of the possession of said building for some two or three hours, having delivered possession as hereinbefore stated to said Walter White and wife before noon on October 1, 1923; that respondent now shows that said lease had been terminated by the dissolution of said firm of Carter and Cutshaw, and by the written notice of the said Carter that he elected to terminate the same, and that the said Cutshaw admitted and recognized the termination of said lease and became a tenant at will of this respondent. Respondent shows further that the said Cutshaw is absolutely insolvent, and that his creditors have been bringing suit against him and levying upon such property as he had subject to execution; that he had very seriously damaged respondents machines and other property, that he was failing to keep the property in re-

pair, and that if he should be restored to the ·possession of the property, that respondent will suffer an irreparable injury; and further that should he be restored to the possession of said property and permitted to harrass respondent's present lessees, that respondent will be subjected, in all probability, to other litigation and a probable loss of the rental of his building for an indefinite period, and thereby suffer an irreparable injury. Respondent avers that unless restrained from so doing complainant will so expose him to irreparable damage and injury. That the injunction bond given in the case is absolutely insufficient to protect respondent against the loss which he is liable to incur, and in addition to this he believes the sureties thereon are worthless.

That respondent now shows that the mandatory injunction granted by the Circuit Judge in this case on this day was inadverently granted, under an absolute misstatement of the facts, and respondent is advised that under the facts herein stated the court will suspend the enforcement of said mandatory injunction until a hearing can be had upon the merits. Respondent will pray that this answer be filed as a cross-bill, and he states that he is willing, ready and able to execute any bond the court may fix for the protection of the complainant Cutshaw, insuring him against any possible loss or damage.

The cross-bill was amended by inserting at the close of paragraph 6 thereof, the following:

That respondent shows that his answer and cross-bill was hurriedly dictated, and he now avers that the notice to terminate said lease given him by said Carter under the terms of said lease was conclusive and binding upon each partner, and after said notice, and after said dissolution of the firm one partner could not force him to lease to him, as that would destroy the contract itself. That as hereinbefore alleged respondent leased to said firm solely on the ground that said Carter was solvent, while the complainant Cutshaw was and is utterly insolvent, and that respondent would not lease to him under any conditions, other than the best of security; that neither could one partner assign any interest in said lease to the other.

That respondent further shows that after the termination of said lease, as stated, in June, 1923, complainant simply became his tenant at will, with the understanding that he would vacate at any time, and that the complainant repeatedly stated to this respondent that he would so vacate the premises upon his demand, and that when the lease was made to defendant White and wife this respondent informed the complainant that he had leased .to said White, and that said White would occupy the premises on October 1, 1923. Whereupon it was averred that the complainant agreed, and stated to this respondent that he would vacate the premises and give said White possession.

That it was especially provided in the lease in question that upon a breach of the contract, at the option of the lessor, he or his representative might enter and take possession of said premises without in anywise becoming a trespasser, and this respondent took possession of said property in a way absolutely legal and valid. That respondent now shows that said lease to Carter and Cutshaw had been breached prior to July 21, 1923, by the failure of said firm to keep the property in repair, as provided by the terms of said lease, and by permitting equipment to become in a very bad state of repair, and that it will cost this respondent more than three hundred dollars to repair the damages done the equipment. That said equipment is worth from $4000 to $5000, and he therefore avers that the terms of said lease were breached by the parties, and that he had a right to treat the same as terminated on this account, as well as upon the express notice given him by said firm acting through one of its members, the said Carter.

A further amendment was had so as to aver that the complainant, in violation of the terms of said lease, permitted the equipment, to-wit, Piano, motor, projection machines, chairs, fans, and other equipment, to become in a bad state of repair, and said equipment was damaged by the negligence and want of care of the cross defendants in the sum of $2500.

The prayer of the cross-bill was amended, so as to pray: That the cross-complainants have a recovery against the cross-defendant for the sum of $2500 damages to the equipment of said theatre, and that if necessary the cause be referred to the Master to ascertain and report the amount of said damages. He prays that the complainant H. M. Cutshaw be made party defendant to the cross-bill, by the issuance and service of proper process, that he be required to answer, but not on oath. That the said Cutshaw be enjoined from entering said premises or in any way interfering with or using the machinery or appliances therein: that he be enjoined from in any way interfering with the cross-complainant's lessees, Walter White and Grace White, in their occupancy of said building and premises; that the Mandatory injunction granted by the Circuit Judge in the cause be suspended until a final hearing upon the merits; that the court decree that said lease to Carter and Cutshaw was and has been fully terminated by the parties. The cross-bill prayed for general relief.

The answer of complainant Cutshaw to the cross-bill was filed October 8, 1923, in which it was averred that the complainant for answer to the cross-bill stated that he was not advised as to whether the Gay Theatre is a domestic corporation, or who owns the stock in same, but that the lease was in the name of T. H. Campbell, as lessor. It was denied that the respondent Campbell was induced to make said lease to said Carter and Cutshaw solely upon the

ground that said Carter was, and is, a solvent and reliable man, while as stated, the said Cutshaw was not then solvent, and is now utterly insolvent, and he demands strict proof of same.

He admits that notice was given to respondent Campbell on or about May 17, 1923, of the desire to extend said lease for a period of one year, as provided in the lease, and he avers that said notice was given by Carter and Cutshaw, the lessees in said lease, and that the same complied in every respect with the requirements in the lease for notice. He avers that said notice was accepted by respondent Campbell, and never questioned in any way until long after the expiration of the first year of the lease. He denies that Carter made the statement to respondent that he did not authorize anyone to write this letter, and that he knew absolutely nothing about it. The answer avers that complainant was the active manager of the business conducted at Newport, and that as such he had full authority to do any and all acts necessary and advisable to carry on said business. That after said notice was given to respondent of the desire to continue said lease, and before the expiration of the first year, respondent had full knowledge and notice that the said Carter and Cutshaw had dissolved partnership, and respondent was notified of the desire of Carter to be released from any further liability on said lease, provided respondent made a new deal with complainant, or it was agreeable with respondent for him to be released. The answer averred that complainant now shows that said Carter was never released from said lease in any respect, and that he is now bound by the same absolutely, and further shows and avers that said Carter has so written respondent and has told him that he considered the lease in full effect and force as to him, the said Carter; and further that if for any reason the said Cutshaw did not comply with all the terms of the lease, that he himself, Carter, would take over the picture show and operate same under said lease agreement. And respondent to the original bill is hereby notified to produce at the hearing said letter received from said Carter to this effect. It is further averred that said Carter made no attempt in said letter of June 14th to be released from said lease, or to terminate the same, and it is specifically denied that the same was terminated, or that it was so treated by the parties. It is averred that there is no provision whatever in said lease for the thirty days' notice of termination as alleged by the respondent, and that no such notice was given by Carter. The answer avers that about one month before the expiration of the first year of said lease he succeeded to all the rights of Carter in and under said lease, of which it was averred that respondent had full notice and knowledge, and that if respondent had any right whatever under the terms of said lease to terminate the same at the expiration of one year, he waived the same absolutely, and is now estopped to deny said waiver.

It is further averred in the answer to the cross-bill that after said notice of the desire to extend said lease was given, and after respondent had full notice and knowledge of the arrangement that had been made by Carter and Cutshaw for the continuance of the business, nothing whatever was said by respondent, and no objection whatever made by him to the extension of said lease, until a good while after the expiration of the first year, and after the extended term of said lease had begun, and after this complainant had paid to and respondent had accepted the increased rental provided for in the extended clause of said lease. It was averred that said respondent accepted the rental specified for the extended period without any objection whatever, and said nothing at any time to this complainant about his being a tenant at will, nor did respondent by any words of action show any intention but to continue said lease under the privilege of extension therein set out.

Respondent again denied that said lease was at any time treated by any of the parties as being terminated until long after the expiration of said first year, and after complainant had paid his increased rental. Receipts for such rental were filed as Exhibits 1 and 2. It was denied that he ever treated or considered said lease as terminated, or that he sought to make any other arrangement about it, but it was averred that a short time before September 1, 1923, long after the beginning of the extended term of said lease, complainant heard that respondent was trying to sell the building, and he thereupon went to respondent and asked him if he had sold same, or was going to, or something to this effect, and that Campbell then told him that his lease was broken; that nothing whatever was said by respondent about the lease being terminated or broken until after the beginning of the new term, and it was denied specifically that he ever treated the lease as broken, but it is averred that he had lived up to same strictly in all of its provisions, had paid the rental provided for, and that respondent had accepted said increased rental until September 15, 1923, when the rent was tendered to him and refused. It was denied that respondent consented to allow complainant to use the house for thirty days at a time at the will of respondent, or that he, plaintiff, ever in any way agreed to same, or paid the monthly rental as a tenant at will of respondent.

It was admitted that he had received through the mail a paper purporting to give notice that respondent would demand possession of the Gay Theatre premises on October 1, 1923, but it is averred that said notice was not signed by anyone, and that there was nothing on its face to show from whom it came; that complainant attaches said purported notice as Exhibit "3" to his answer, and it was averred that said written notice was the first notice he had had that respondent treated said lease as terminated.

It was denied that he knew anything about the renting of said premises to another party, or when it was expected to take effect, and demands strict proof of the same.

It was again averred in the answer to the cross-bill that respondent forcibly removed the locks from said building and put new ones thereon after complainant had refused to surrender possession of the premises, but it was denied that respondent to the original bill ever took legal possession of said building or premises, or that he ever delivered possession of the same to Walter and Grace White, or that either of said parties are now or have been in the legal possession of said building and premises. It was averred that at the time the bill in the cause was filed, and at the time of service of same upon respondent Campbell, and Walter White as his agent, the said Campbell and White claimed to be in possession of said building under such forcible and unlawful entry, and that they refused to obey the mandate and fiat of the injunction, and failed and refused to deliver the keys of said building, or is any way to obey said injunction.

Complainant again avers that said Campbell never regained the legal possession of said building, and therefore could not have delivered same to Walter and Grace White. It is averred that said lease was in full force and effect for the period of one year from and after July 17, 1923.

It was denied that complainant was insolvent, or that his creditors had been bringing suits against him and levying on such property as he has subject to execution. It was averred that the allegations to this effect in said answer and cross-bill are wholly without foundation in fact, and that they were made solely for the purpose of prejudicing the rights of complainant.

That complainant knows nothing about any liability respondent may have incurred to Walter and Grace White by reason of his attempt to give them a lease on said building and premises, but it was denied that respondent will suffer irreparable injury unless this complainant is restrained from interfering with respondent. It was averred that he was ready, willing and able to pay the rent specified in said lease in advance, as he had been doing all the time.

It was denied that the mandatory injunction was granted under an absolute misstatement of facts; he avers that it was rightfully granted, in order to protect complainant from the unlawful and wrongful acts of respondent, and after a full and complete statement of the facts had been made; and it was averred that unless said injunction was made permanent that he would suffer great and irreparable injury and damage, for which there was no adequate recourse except in this court.

The answer of the defendant White was filed October 6, 1923. He admits that in September, 1923, he leased from the defendant Campbell, for a period of five years, commencing October 1, 1923, the Gay Theatre and equipment in question in the cause. He states that he leased same in good faith and without notice of any claim the complainant had thereto, and that on the morning of October 1, 1923, this respondent came to Newport and found the building and equipment in possession of T. H. Campbell, who delivered to respondent possession thereof, and it is averred that he had remained in possession ever since.

He denies that he had any knowledge of the alleged rights of complainant Cutshaw. As to this it was averred that about June —, 1923, this respondent was informed by Mr. Carter, partner of complainant Cutshaw, that he had dissolved partnership with Cutshaw, and had severed relations with him, and was going out of the theatre business with said Cutshaw; that, acting under this information from said Carter, a member of the firm, and upon the representations of the said T. H. Campbell that the lease of Carter and Cutshaw was terminated, this respondent leased said building as hereinbefore stated, and was placed in possession thereof by the said T. H. Campbell, who had possession of the same when this respondent arrived at Newport, Tennessee.

It is averred that respondent is entitled to the use and possession of his said lease, and that to deprive him thereof would cause him to suffer an irreparable damage at this time. He averred that the mandatory injunction granted by the Circuit Judge was inadvertently granted, and insisted that the operation thereof should be permanently stayed. And all other allegations in said supplemental and amended bill insofar as they affected respondent, not herein admitted or denied, were denied, with a prayer that he be hence dismissed with his reasonable cost.

Proof was taken on the issues thus abundantly and repeatedly presented, and on the hearing by agreement at Chambers, the Chancellor in a lengthy decree (pages 150 to 154 of the record) setting out his various findings and judgment as to the issues involved, dismissed the complainant's bill, adjudging that he was not entitled to the relief sought, and taxing the original complainant and his securities on his cost bond with all the costs of the cause, and awarded execution therefor.

The court further decreed that under the cross-bill of the defendant Campbell as amended that the said Campbell is entitled to recover of complainant Cutshaw the damages to the equipment of the theatre while in the possession of said Cutshaw, and referred same to the Master to hear proof and report the amount of such damages, if any, that the said Campbell was entitled to recover

on account of injuries to the equipment of said Theatre while in the possession of said Cutshaw, and report his finding to the next term of the court; and that in doing so the Master was directed to consider the proof on file, and any other proof that the parties might desire to offer.

That during the trial of the cause certain exceptions were made to testimony, which exceptions are noted on the margin of depositions, together with the action of the Chancellor thereon, and for the purpose of appeal the excluded testimony is restored to the record.

To the action of the court in dismissing complainant's bill, and granting a decree against him, together with the costs of the cause, the complainant excepted, and prayed an appeal to the next term of the Court of Appeals at Knoxville, which appeal was granted and perfected, and complainant in the original bill has assigned the following as errors:

1. "The court erred in dismissing complainant's bill on the ground (a) that said lease could not be renewed for a period of one year according to the notice given by the complainant to the defendant that he would want the theatre another year; (b) that the lease could not be transferred, and that complainant could not take a lawful transfer of the interest of W. G. Carter in an to said lease because the contract provided that if the lease should be assigned or transferred it would be invalid unless notice was given to the landlord, the defendant in this case; (c) that there had been no waiver on the part of Campbell of a forfeiture of the lease as relied upon in the bill and by the insistence of the complainant, that although the defendant had received and accepted a rental of $150 per month after the termination of one year, same was done in accordance with another contract entered into between the complainant and the defendant, and not in pursuance of and in compliance with the old contract relied on in this case.

The court should have held that the complainant was entitled to possession of the theatre, and that the defendant had no right to enter upon the premises and take possession of the property, either under the terms of the rental contract or against it, that the defendant could not forcibly oust or reject complainant from the premises."

2. "The court likewise erred in holding that the defendant was entitled on his cross-bill to recover against the complainant in the case damages that were done by the complainant to the theatre or its contents."

3. "The court likewise erred in taking the complainant and surety with the costs of the case."

This bill is an action of forcible and unlawful entry and detainer, though it sought through the aid of a mandatory injunction to throw the defendant out of the premises in advance of inquiry, in about the same expedition, at least, that was used in the complainant's ejection. However, this is to be said in its favor; that the bill sought the aid of the sovereign, (as to whom it is sometimes said "the King can do no wrong") and interposed a small injunction bond, that in the event it should be determined, notwithstanding the good reputation of the King, he being sometimes found derelict, and should he be so found in this instance, to rectify those wrongs insofar as money may be able to salve the injuries inflicted by too hasty or ill-considered action. A mandatory injunction was issued and served upon the defendant by reading the same to him, and by the amendment to the bill it seems he satisfied its requirements by simply informing the officer that he had turned the property over to one W. W. White, and thereupon the bill was amended making White a party, upon substantially a reitteration of the allegations of the bill, coupled with others connecting and alleging defendant White's derelict and responsible connection therewith, and sought and obtained a fiat for another mandatory injunction as prayed for, substantially in terms as applicable to the said White as well. The bond for the injunction and the injunction itself never included White, but only T. H. Campbell, his counsel, attorneys, solicitors and agents. It was served upon said White as agent, it was recited, holding possession under T. H. Campbell. This injunction was served on October 1st, and on October 2nd the answer of T. H. Campbell was filed as a cross-bill, in which it was sought to enjoin the defendant and original complainant from entering the said premises, or in any way interfering with or using the machinery or appliance therein, and from in any way interfering with cross complainant's lessees, Walter White and Grace White, in their occupancy of the building and premises.

The Chancellor granted the injunction as prayed for. It was served. He also suspended the mandatory injunction, and on a later hearing therein further suspended it upon the execution of bond in the sum of $2000.

Such is the statement of the somewhat complicating preliminaries of a forcible and unlawful entry and detainer action filed by the complainant Cutshaw against the defendant Campbell, to recover the possession of the Gay Theatre in the town of Newport, Tenn., which possession, it was alleged, the defendant Campbell had forcibly taken from him.

His right to the possession was primarily predicated upon a certain lease that had theretofore been made to him and his partner, W. G. Carter, for one year, rights which he claimed to have succeeded to at the time of such dispossession. The lease is in terms as follows:

"This Indenture made and entered into this the 10th day of July, 1922, by and between Tom Campbell, of Newport, Tennessee, hereinafter referred to as the lessor and W. G. Carter and H. M. Cutshaw, both of Greenville, Tennessee, hereinafter referred to as the lessee,

"Witnesseth: That the said lessor for and in consideration of the rents, covenants and agreements of the lessee, as hereinafter set forth, has this day demised, leased and rented unto the said lessee the following described real estate and premises, situated at No.——— Main Street, Newport, Tennessee, to-wit:

"The building, or that portion of same, known as the 'Gay Theatre,' including the contents of same, and all equipment, consisting of two moving picture machines, 467 theatre chairs, one Wurlitzer piano, two stoves, screens, fans, and all other fixtures and appliances now installed in said building at the date of this instrument; together with all the rights and privileges and appurtenances thereunto belonging, to have and to hold the same for and during the period of one year from the date of this instrument, subject to the terms and conditions of this lease as hereinafter set forth.

"In consideration of which, the said lessee hereby promises and agrees to pay unto the said lessor, as rent for said premises, the sum of $125 per month for the first six months of said lease and the sum of $140 per month for the remaining six months of said lease, said payments to be made monthly, in advance.

"It is further agreed by and between the parties hereto that should the lessee so elect, the term of this lease shall be extended for a period of 5 years, or until July 17, 1927, from the date of this instrument, and should said lease be so extended, the said lessee hereby promises and agrees to pay unto the lessor, as rent for said premises, the sum of $150 per month for the period for which said lease is extended, payable as above set out, provided, however, that the lessee shall signify to the lessor, in writing, his desire to extend the term of said lease, and further provided, that the lessee may terminate the period of extension of this lase at the expiration of one year from the extension thereof, or at the end of any subsequent year, within said period of extension, by giving written notice, thirty days prior thereto, to the lessor.

"The premises above described shall be used and occupied by the lessee as a theatre, and for no other purpose without the consent of the lessor in writing. Said premises shall not be sublet, nor may this lease be transferred without the consent of the lessor in writing.

"The lessee hereby promises to furnish and pay for all heat, water, light and electricity used by him upon said premises.

"The lessee hereby promises and agrees to restore the building and contents to the lessor, at the termination of this lease in as good state and condition as they are now in, reasonable use and wear thereof and damage by the elements excepted.

"It is agreed by and between the parties hereto that any addition to, or improvement, or equipment installed by the lessee, shall at the termination of this lease, remain the property of the lessee, and may be removed therefrom by said lessee.

"In the event the building on said premises is damaged or destroyed by fire to such extent that the same can not be used by the lessee for the purpose of his business during the term hereby created, then the lessee shall not be required to pay any rent for said building and premises, until the same have been restored by the lessor to the condition that such premises were in before such fire occurred, or should the lessee so elect, in the event of loss or damage by fire, this lease shall terminate.

"At the expiration of the term hereby created, or upon the failure of the lessee to pay any installment of the rent when the same shall become due, or upon a breach by him of any of the terms or conditions of this lease, the same shall, at the option of the lessor, terminate at once, without notice, and the lessor, his representatives and assigns may enter upon and take possession of said premises without in any wise becoming a trespasser.

"The lessor shall pay all State, county and municipal taxes on the premises hereby leased, and the lessee shall pay all privilege and other taxes incident to the operation of the business to be conducted on said premises.

"The lessor shall keep the building hereby leased in a good state or repair, and shall defray all expenses incident to the repair and maintenance of same, and said building shall be maintained in as good a state of repair as it now is at the date of this instrument.

"The terms and conditions of this lease shall extend to and be binding upon the heirs, executors, administrators and assigns of each of the parties hereto.

"In Testimony Whereof we have hereunto set our hands, the day and date first above written.

"T. H. Campbell, Lessor.
"W. G. Carter, Lessee.
"H. M. Cutshaw, Lessee."

The complainant and his partner had gone into possession and use of the property described in said lease, and under the terms thereof.

It is observed that for certain monthly payments in advance, in the sum of $125 per month for the first six months, and $140 per month for the last six months, they were entitled to the occupancy and use of the property for one year from July 17, 1922. It was also provided, as will be observed, that they had a right to renew or extend the lease for a term of five years on terms of payment of $150 per month for such extended period, by giving thirty days notice of their intention to do so, and after such extension they could terminate the lease in any one of those years by giving a similar notice. Without the intervention of such notice the lease would have terminated the first year automatically.

The complainant insists that the lease was kept alive by virtue of a notice which he says he and his partner sent in May, as follows:

"Greenville, Tenn., May 17, 1923.

"Mr. T. H. Campbell,

"Newport, Tenn.

"Dear Sir:—

"Please be advised of our desire to continue the present lease on the Gay Theatre for a period of one year commencing July 17, 1923, as stipulatd in said lease.

"Yours truly,

"The Princess Amusement Co.

"By Carter & Cutshaw,

"Per H. M. Cutshaw."

This letter was sent some sixty days before the termination of the term, and we think, if it was otherwise sufficient to renew or extend the lease, the matter of its being sixty days instead of thirty days would cut no figure. By the terms of this contract, however, they were not authorized to validate a five-year-term by notification that they expected to renew for one year. It is quite true that had they renewed for five years, they might subsequently, by a notice of their intention to do so, have terminated such term at the end of one year, but the two were not equivalent. Men do not always remain in agreement either to continue or terminate a contract, as illustrated in this case. In the form the letter referred to was forwarded to defendant Campbell it was not an acceptance of a five-years-extension tendered the partners under the lease; it at best was only a proposition for a term, in effect a modification of the lease. It therefore required the acceptance of Campbell to make the contract effective for a one year term under the lease, and before such acceptance was had, or shown, the proposition was practically withdrawn by the letter of the other partner of June 14, 1923, which also informed the said Campbell of the dissolution of the partnership. Had the first letter notified the defendant of their election to extend the lease for five years, it would have constituted a contract binding

both parties under its terms, no matter what agreement the partners may have made as to the property or its use and occupancy afterward, during the remainder of the extended term. So far as the defendant Campbell was concerned, the partnership would have continued for all purposes of his protection, and the liability of each would have continued, though the interest in the lease of one of the partners in the meantime may have been transferred to the other. The effect of the contract would have been to secure the right of either to continue in the management and occupancy as between themselves, but as regards the liability for such occupancy so far as defendant Campbell was concerned, it would have continued as an occupancy and management of the firm, unless he had consented to the transfer. In other words, so far as the defendant was concerned, there was never, nor could there be, without his consent, such a severance of the relations of the partners as to involve the withdrawal of the responsibility of such retiring partner for any remainder of the term; but so long as the term existed, and without any change of liability to the defendant, they could make such arrangement between themselves regarding the benefits under the contract as they might think proper.

The authorities cited by complainant's counsel are in line, we think, with this statement, but we do not think this case involves any question of transfer or forfeiture. We do not think that the contract of lease was ever renewed or extended, and what might have been the effect of the letter of May 17, 1923, had it in terms exercised the option for a five-years-extension, is not necessary to be determined. After the dissolution of the partnership the right to exercise the option did not exist in either as a single individual. There may have existed reasons, and such are claimed by the defendant, and sufficient ones, if true, as to why he was unwilling to continue the lease with one upon his single responsibility. In other words. it was competent for the partners to dissolve before an extension had been effected, and this is what they did, thus defeating any exercise of the option because of their voluntary action.

As indicated, we do not think the proof shows that there had been an acceptance of the offer of renewal of the lease for one year, which might be regarded as tendered by the partners in the letter of May 17, 1923. This letter is shown to have been followed by that of June 14th informing Mr. Campbell of the dissolution of the partnership before the first term had terminated, and before any evidence showing that there had been an acceptance of that offer. On the contrary, it is claimed and testified to by Mr. Campbell, substantially, that he was, and had been, unwilling to continue with Mr. Cutshaw, without the execution of a bond, which Cutshaw was unwilling or unable to give; that he told him he had no disposition of the property in sight, and that he might stay on there at the price

of $150 per month until he could dispose of it; which he says was agreed to by Mr. Cutshaw, who, he said, paid him the money for July and August; that in September Mr. Cutshaw had tendered him the money for another month, but that he declined to receive it, as he had made other disposition of the property, but allowed him to stay on until October 1st, without rent for the balance of September. He says Mr. Cutshaw had agreed to give up the possession, and we think the weight of the proof establishes this contention. It is true Mr. Cutshaw states that he did not have any agreement from month to month as alleged, and that the rental was paid under the original contract. We are inclined to think that this is more his construction of the contract being and remaining in force under the notification of May 17th than anything else. At any rate the circumstances, we think, give the corroborative weight to Mr. Campbell's contention as to this matter.

We think, also, that it disposes of Mr. Campbell's claim as to any question of damages outside of the original term of one year, because his insistence is that there was no renewal under the terms of the lease, but rather upon his verbal agreement that Mr. Cutshaw might remain in the possession of the property as tenant at will pending its rental to others. However, he had learned in the meantime that complainant was not going to surrender possession. He admits both in the cross-bill and in the evidence that possession was not willingly surrendered, but that he forcibly resumed possession, which he avers that under the terms of the lease was legal.

Regarding the manner of the taking of possession, Mr. McMahon, who was present, said:

"Q. Do you know the condition of the theatre at the time Mr. Campbell took possession of it as to whether the doors were locked? A. Yes sir, they were locked."

"Q. With what kind of locks? A. Yale locks or similar kind."

"Q. How many doors to the theatre? A. To the main en-entrance?"

"Q. Yes. A. Two."

"Were they both locked? A. Yes."

"Q. Who had the keys? A. I had a key and Howard had a key."

"How did Mr. Campbell enter the building? A. He went into the building first through a room, I had a key to it."

"Q. You were sleeping there in the building, your sleeping apartment?" A. Yes sir."

"Q. Could you enter the main theatre building? A. Yes sir, at the end of the operating room."

"Q. How did he come into the main building? A. Thru the transom over the door.",

"Q. Were you in there at the time he entered? A. No sir."

"Q. How did he get the front doors open? A. He had a carpenter, and went thru the transom and took off the locks."

"Q. Did he take off the yale locks? A. Yes sir, took them off and put on new locks."

"Q. Were you in there when he did this? A. No sir."

"Q. Did you see him? A. I saw him in the building."

"Q. The door in your room was also locked? A. Yes, sir."

"Q. Was Mr. Cutshaw operating the theatre at this time? A. Yes sir."

"Q. Did he have a show advertised for that night the day he entered? A. Yes sir."

"Q. Did he enter at daytime or nighttime? A. He entered in the daytime."

"Q. Was there any other force used there by Mr. Campbell, except taking off and putting on locks? A. No sir."

"Q. Did you and Mr. Cutshaw go in there while he was in there? A. Yes sir."

"Q. What did he say? A. He said to get out, with oaths."

"Q. He cursed some, did he? A. Yes sir."

Mr. Cutshaw also says regarding same: -

"Q. Just what did he do to effect an entrance? A. He came there and commenced moving the display boards around, and I was across the street, and I went over there and asked him what he was doing, and he said he had rented the building to another fellow and was going to let him have possession, and I says, "I have a lease on it," and he says, "no, you haven't" and demanded the keys, and I told him I wouldn't give them to him, and I suppose he had a key to one of the doors up there. Anyway he was in there when I was up there and commenced pitching things around, and I said something to him about it, me and Mr. McMahon were together, and he told us to get out, with an oath, both of you, and I went to see the sheriff to see if I couldn't get protection for destroying all this advertising and stuff I had paid for, and when I came back he had a carpenter with him, and this fellow had opened the transom over the main entrance, and taken the locks off and put new locks on, and I couldn't get in them."

"Q. Do you know what kind of locks he put on? A. No sir."

"Q. What kind of locks did you have on downstairs? A. Yale locks, or practically the same thing."

"Q. You say he went in over the transom? A. Yes sir, or the carpenter did it for him, and had new locks put on."

"Q. Did you give him permission to go in there, or had you actually forbidden him going in? A. I didn't give him any

permission, and asked him what he meant by destroying that advertising, and he told me to get out and stay out, and then he said later that if I didn't get what I had in there out he was going to put it out in the street."

"Q. Did you have a show advertised that night? A. Had it advertised for a full week, and had the films there for that day."

Without regard to any question of title or right, the jurisdiction of the courts to determine these questions of disputed sovereignty cannot be delegated to individuals, and even though the defendant Campbell may have had a clear right to the premises, he had no right under any assumption of grant to become judge, jury and sheriff under the circumstances of this case. The clause in the lease authorizing him upon failure (and it may be remarked that we do not find there was any forfeiture) or default to resume possession without being regarded as a trespasser, did not clothe him with the potentialities of a sheriff with a writ of possession. Even if it undertook to do so, it was right in the teeth of the law, subversive of its peaceful process, and void. The purpose of the statute was to prevent violence. Sections 5090 and 5091 of Shannon's Code are as follows:

"No person shall enter upon or into any lands, tenants or other possessions, and detain or hold the same, but where entry is given by law, and then only in a peaceable manner."

"A forcible entry and detainer is where a person, by force or strong hand, or with weapons, or by breaking open the doors, windows or other parts of the house, whether any person be in it or not, or by any kind of violence whatsoever, enters upon lands, tenements, or possessions, in the occupation of another, and detains and holds the same; or by threatening to kill, maim, or beat the party in possession; or by such words, circumstances, or actions, as have a natural tendency to excite fear or apprehension of danger; or by putting out of doors or carrying away the goods of the party in possession; or by entering peaceably and then turning or keeping the party out of possession by force or threats or other circumstances of terror."

"To constitute the offense of forcible entry and detainer it is not necessary that violence and outrage upon the person or property should in fact be resorted to. If the actual possession of another be invaded, taken and held under the circumstances, showing that it will not be surrendered without a breach of the peace on the one side or the other, this constitutes in law forcible entry and detainer." Note 1 to above section, citing Childress v. Black, 9 Yer., 317, 320·

"The remedy of forcible entry and detainer protects possession without reference to title, as shown by section 5103. It was given

in order to preserve the peace and harmony of society, by preventing persons who have conflicting titles to the same land from taking redress of their own wrongs into their own hands, and to prevent violence, to which the temptation would be great, if a party dispossessed by violence could legally regain possession only by making out title." Note 2 under said sections, and numerous other notes and authorities cited.

We think, therefore, that the Chancellor was in error in dismissing complainant's bill and taxing him with the cost, as, nothing else in the way, he was entitled to be restored to the possession thus unlawfully and violently taken. However, as the right existed in the cross-complainant Campbell at the time to have filed his application to the court to be restored to the possession, it was competent and proper for him to file a cross-bill, having regained possession, to settle the right thereto, and for the purpose of having himself vindicated in this right. The Chancellor was therefore correct in sustaining the said cross-bill, which would have had the effect to restore him to the possession; and as in this instance everything can be settled by allowing him to remain in possession, just as though he had been restored to it upon his own application, after the complainant had been restored, he will be allowed to remain in possession, but he will be required to pay all the costs of this cause.

Defendant Campbell, if he so desires, may have a remand and a reference to the Clerk & Master to take proof and determine what damage, if any other than the wear and tear of the contents of the building he suffered during the first year of the lease to which he has not contributed by failing to keep the roof in proper repair, as it is adjudged it was his duty to do under the terms of the lease. Proof on file may also be considered.

Original complainant Cutshaw is not awarded any damages other than the nominal sum of one dollar for the unlawful dispossession, it not appearing that he had any rights in said property after October 1, 1923.

The Chancellor's decree will therefore be modified to the extent indicated, and affirmed.

Portrum and Thompson, JJ., concur.