# W. E. STEPHENS MFG. CO., Inc., et al. v. BUNTIN et al.—181 S. W. (2d) 634.

Middle Section.  January 22, 1944.

Petition for Centiorari denied by Supreme Court, July 1, 1944.

412

Thomas G. Watkins, of Nashville, for appellants.

Bass, Berry & Sims and Hume, Howard, Davis & Gale, all of Nashville, for appellees.

HOWELL, J.   This is a suit by the W. E. Stephens Manufacturing Company and the National Union Fire Insurance Company against Mrs. Jane Berry Buntin and Mrs. Elizabeth Sinclair Buntin, the owners of the two buildings, joined together and used as one, at 306 and 308 Second Avenue North in Nashville, which had been leased by the plaintiff Stephens Manufacturing Company by a written contract for a term of years beginning January 1, 1942.   The property leased by said plaintiff was to be used for a shirt and overall factory and warehouse and the suit was for damages resulting to the property of the plaintiff Stephens Manufacturing Company, when the purchaser of a metal tank and supporting I-Beams, formerly used in connection with the automatic

sprinkler system in these buildings was removing same from the buildings. The workmen, while lowering one of the I-Beams which had supported the water tank through an elevator well hole, permitted it to strike one of the sprinkler system supply pipes, breaking it and causing quantities of water to be released in the building, and before the proper valve could be closed this water caused damage to the merchandise and other property of plaintiff Stephens Manufacturing Company. This damage was covered by an insurance policy issued by the plaintiff National Union Fire Insurance Company and this company settled plaintiff Stephens Manufacturing Company's claim by paying to it the sum sued for and this suit was brought for the use and benefit of the Insurance Company.

The first count in the declaration alleges a breach of the covenant of quiet enjoyment in the lease contract and hence the right of plaintiff to recover.

The second count of the declaration is based upon the allegations of negligence on the part of the defendants in permitting inexperienced men to use unsound equipment in removing this tank and I-Beams, in that one of the ropes used in so doing was worn and not of sufficient strength to hold the beam being removed and the third count alleged negligence in allowing the purchaser of the tank and I-Beams to use inexperienced men and defective equipment in doing this work.

The defendant Jane Berry Buntin pleaded that she had acquired the building owned by her by inheritance from her husband and had no interest in the adjoining building in and upon which the tank and I-Beams were located, or in this tank and the I-Beams, and did not know of the removal or intended removal of same prior to the claim made by plaintiffs, that she was not a party to any

agreement to have same removed and did not authorize any one to act for her in connection therewith and that the removal of the I-Beams was made by an independent contractor with direct permission of the plaintiff Stephens Manufacturing Company. It was also pleaded that the plaintiff was estopped to complain against her as its claim, if any, was against the independent contractor who was engaged in such removal. The defendant Elizabeth Sinclair Buntin pleaded the general issue.

Upon the trial of the case at the conclusion of the plaintiff's proof the Circuit Judge granted a motion to dismiss the suit made by the defendants.

The suit was dismissed and the plaintiffs have appealed in error to this Court and have filed thirty-one assignments of error which will not be discussed separately.

The record discloses that during the term of the lease the real estate agent who had negotiated the lease for the owners, notified the Stephens Manufacturing Company that the unused tank and beams supporting it had been sold by the owner. Later the authorized representative of the plaintiff Stephens Manufacturing Company granted to a Mr. Lefkovitz permission to enter the property for the purpose of removing this tank and supporting beams and Lefkovitz with his men proceeded to remove them and while doing so a rope broke, causing an I-Beam to strike the water pipe and break it and this caused the damage complained of. No claim was made against the owners until some time after the plaintiff Insurance Company had settled the loss with Stephens Manufacturing Company.

It is not established by the record that the real estate agent had any authority from the owners other than that

implied from the fact that he was the rental agent who negotiated the lease. Nor is it established from the record that the agent had any connection with the removal of the tank and supports other than to notify the plaintiff Stephens Manufacturing Company that they had been sold. The purchaser secured permission from the tenant to enter the premises and remove the property he had bought. It is also not established by the record that the agent or the owners knew anything whatever about the insecurity of the rope or other equipment used in the removal or the experience or lack of experience of the men doing the work. The plaintiff Stephens Manufacturing Company through its representatives was present while the removal was being made and the defendants had no notice or knowledge of the manner in which it was being done or the ability or competence of the men engaged in the work.

The record also does not disclose by whom or to whom the tank and supporting beams were sold other than that the agent called the plaintiff Stephens Manufacturing Company and told them that they had been sold either to a Mr. Lefkovitz or to Cline and Bernheim. As stated the arrangements for the removal were made by the purchaser with the representative of the plaintiff.

The proof does not support the allegation in the declaration that there was any understanding between the plaintiff Stephens Manufacturing Company or its representative and the owners or any one authorized to represent them that "they, the said defendants of either or both of them, would be responsible to said plaintiff for any and all loss or damage that might be done or sustained by said plaintiff."

The principal questions, therefore, for determination are whether or not there was a breach of any covenant

of quiet enjoyment in the lease and whether or not the owners under the facts of this case were guilty of any negligence in connection with the use of any unsafe or unsound equipment by the purchaser in making the removal or in allowing inexperienced or incompetent men to do the work.

■ Although the lease does not contain any express covenant of quiet enjoyment of the premises to the lessee, such a covenant is implied and means that the lessee will be protected by the lessor from any interference with his possession by one claiming a paramount title or any acts of the lessor which will destroy the quiet and beneficial enjoyment of the use of the property. This covenant extends only to acts of the lessor or those claiming under him and not to strangers without lawful title or authority. Such a covenant implies no warranty against the acts of wrongdoers. Chestnut v. Tyson, 105 Ala., 149, 16 So. 723, 53 Am. St. Rep., 101 and Annotations at page 113; Underwood v. Birchard et al., 47 Vt., 305.

In this case the lessors could not have required the lessee to permit the purchaser to enter the premises and remove the tank and supports as this would have amounted to a breach of the implied covenant of the lease and an interference with the lessee's right to the use and enjoyment of the premises.

32 American Jurisprudence, par. 197, page 187; Maryland Tel. & Tel. Co. v. Ruth, 106 Md., 644, 68 A., 358, 14 L. R. A. (N. S.), 427, 124 Am. St. Rep., 506, 14 Ann. Cas., 576.

The lessee acting through its authorized representative consented to the removal of the tank and beams and permitted the purchaser to enter the premises for that purpose.

A representative of the lessee was present when this I-Beam that did the damage was being removed.

See testimony of W. H. Richards, Tr. pp. 39, 105, 136.

Neither of the owners or any one representing them were present at the time the work was being done or had any knowledge or notice that the equipment was insufficient or the men engaged in the work were not experienced men.

We find no evidence in the record upon which a finding that these defendants were guilty of any negligence could be supported. The men doing the work of removing the tank and I-Beams were employed by the purchaser from the defendants and were present in the building by permission of the lessee for that purpose.

Even if these men representing Lefkovitz or Cline and Bernheim had been employed by an independent contractor, there is no evidence in this record to establish that this case comes within any of the exceptions to the general rule that the proprietor or owner is not liable for the negligence of his contractor and his servants.

In the case of Smith v. Bank of Commerce & Trust Co., 135 Tenn., 398, on page 405 et seq., 186 S. W., 465, on page 466, 18 A. L. R., 788, the Supreme Court said:

"It is not disputed that the E. W. Minter Company was an independent contractor at the time the injury to plaintiff occurred. But it is insisted that the rule to be applied comes within one of the exceptions, and therefore the employer is liable.

"While the general rule of law is that the proprietor or employer is not liable for the negligence of his contractor and the servants and assistants of the latter, yet there are well-established exceptions and limitations to it.

"In the case of McHarge v. [M. M.] Newcomer [& Co.], 117 Tenn. [595], at page 604, 100 S. W. [700], 702, 9 L. R. A. (N. S.), 298, these exceptions in general are:

" 'Where the act contracted to be done is wrongful or tortious in itself; where the injury is the direct or necessary consequence of the work to be done; where the thing to be done or the manner of its execution involves a duty to the public incumbent upon the proprietor or employer; when the work contracted for is intrinsically dangerous, and the performance of the contract will probably result in injury to third persons or the public; and where the proprietor interferes with the contractor in the performance of the work.' "

■ It is not shown in this record that the work of removing these I-Beams was inherently dangerous or that the damage done was the necessary consequence of such removal. Two I-Beams had been removed before in the same manner and no damage resulted. The resulting damage caused by the accidental breaking of the guy rope permitting the I-Beam to strike the water supply pipe could not reasonably have been anticipated by the owners as the necessary consequence of the selling and removal of this I-Beam.

The rule is well stated in the annotations in 23 A. L. R., on page 1019 as follows:

" 'It is as sound a rule of law as of morals that when, in the natural course of things, injurious consequences will arise to another from an act which I cause to be done, unless means are adopted by which consequences may be prevented, I am bound, so far as it lies within my power, to see to the doing of that which is necessary to prevent the mischief. Failure to do so would be culpable negligence on my part.'

" 'Where the act must necessarily result in a nuisance, unless it be prevented by proper precautionary measures, the owner (of the premises on which the work is to be done) is bound to the exercise of such measures.'

" 'One cannot, by employing an independent contractor, relieve himself from liability for the doing of work from which injury will naturally result to another, unless means are adopted to prevent it.'

"The employer is 'Liable if the injury be caused by the thing contracted to be done, or if it be such as might have been anticipated by him as a probable consequence of the work let out to the contractor, and he took no precautions to prevent it.'

" 'The law devolves upon everyone about to cause something to be done which will probably be injurious to third persons, the duty of providing that reasonable care shall be taken to obviate those probable consequences.'

"A person 'cannot set in operation causes dangerous to the person or property of others, without taking all reasonable precautions to anticipate, obviate, and prevent those probable consequences.'

" 'If an injury might have been anticipated as a direct or probable consequence of the performance of the work contracted for, if reasonable care is omitted in the course of the employment then, in every such case, the owner, or the person having the work performed, is liable for an injury sustained during its execution or performance.'

" 'If, however, the work is one that will result in injury to others unless preventive measures be adopted, the employer cannot relieve himself from liability by employing a contractor to do what it was his duty to do, prevent such injurious consequences. In the latter case the duty so to conduct one's own business as not to in-

jure another continuously remains with the employer.' "

The record does not justify the conclusion that the real estate agent did bind the owners by an agreement to be responsible for any damages by reason of the removal of this tank and I-Beams, nor does it appear that the agent had any authority to do so. The conversations detailed by the witness Richards was with reference to the use of the freight elevator. This conversation between Richards and the agent cannot reasonably be construed as any agreement binding upon the defendant owners.

Having concluded from a careful examination of the record and consideration of the exhaustive briefs and arguments of counsel that Lefkovitz, or whoever did remove this tank and I-Beams, was doing so as the owner and not as an independent contractor under the defendants herein, and that there is not sufficient evidence to establish the liability of the defendants and upon which to base a verdict and that the removal of the tank and I-Beams was done with the permission of the plaintiff Stephens, granted to the purchasers and that there was no breach of the implied covenant of quiet enjoyment, we do not deem it necessary to discuss other questions raised by the assignments of error.

All assignments are therefore overruled and the judgment of the Circuit Court affirmed.

The plaintiffs and their sureties will pay the costs.

Affirmed.

Felts and Hickerson, JJ., concur.