Yvonne MORRISON, Plaintiff–Appellee,

v.

Linda SMITH, Defendant–Appellant.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

June 22, 1988.

Permission to Appeal Denied
by Supreme Court
Sept. 6, 1988.

David Kozlowski, Legal Services of South Central Tenn., Columbia, for defendant-appellant.

David Comer, Lawrenceburg, for plaintiff-appellee.

## OPINION

CANTRELL, Judge.

The plaintiff brought an unlawful detainer action against the defendant in the Gen-

eral Sessions Court of Lawrence County, alleging that the defendant was $272.27 in arrears in rental and utility charges. The general sessions judge awarded the plaintiff possession of the real property in question and judgment for the $272.27. The defendant then applied for writs of certiorari and supersedeas to remove the case to Circuit Court, and counterclaimed for $750 damages resulting from constructive eviction and trespass by the plaintiff. The Circuit Judge affirmed the award of the General Sessions Court and dismissed the counterclaim. The defendant appeals, and we reverse.

From the proof at trial, it appears that the defendant signed a lease on June 25, 1986 to rent a lot for $60 per month at "New Prospect Village", the plaintiff's mobile home park located near Lawrenceburg. Most of the tenants at the park live in mobile homes belonging to the plaintiff, and pay their rent and electric bills weekly. However, the defendant had her own trailer and the standard form lease which follows was altered in her case:

TENNANT (SIC) AGREES TO THE FOLLOWING TERMS:

1. RENT *$60* PER WEEK PLUS UTILITIES.

\* \* \* \* \* \*

3. YOUR rent and utility bills are due each Friday. Electric and gas meters will be read weekly and the utility amounts included in your weekly rent. Any rent and utility bills not paid by 6 PM on Saturday are in arrears....

4. If rent and/or utility bills are arrears (sic) seven (7) days, utilities will be turned off. Pre-arrangement must be made with the owner or manager of New Prospect Village for an exception to be made.

Paragraph I of the defendant's lease was modified by crossing out the words "per week" and inserting "monthly lot rent." The remainder of the lease, calling for weekly payments of rent and utilities, was unchanged.

For some reason, rather than having tenants pay electric bills to the local power cooperative in the normal way, the plaintiff had her manager read their electric meters every week, and add the estimated cost of electricity used to the weekly rent. In this case, although the defendant did not have to pay rent weekly, the plaintiff's manager calculated the electric bills on that basis, and entered the amount due on her ledger along with the monthly rental charges.

This ledger shows that the defendant was an irregular payor. After September 12, 1986, she always had an outstanding balance due on her account. She testified that this was due to losing her job after breaking an ankle. After failing to make any payments for three weeks in a row, her electricity was shut off in April 1987. Her daughter's boyfriend then paid $100 to get it turned back on.

From this point, the ledger shows that the defendant made regular weekly payments in the amount of her electric bill, or a little more. Her May rent was not paid, however, until the middle of the month. When she was a week late in paying her June rent, the plaintiff had her electricity and water shut off, and only then gave the following written notice:

New Prospect Village

Lot # 51 Eviction Notice June 15, 1987.

Linda Smith,

You have a balance owing of $212.72. You have 7 days in which to pay the amount of $212.72 or vacate your lot # 51 within 7 days which is June 22, 1987.

Manager,
Patricia Nix

When the defendant failed to leave the premises, the plaintiff commenced the unlawful detainer action on June 26, and the defendant eventually moved her trailer in early August.

### I. The Notice of Eviction

Where a tenant, or someone in collusion with a tenant "willfully and without force, holds over the possession from the landlord", he is guilty of unlawful detainer. Tenn.Code Ann. § 29–18–104 (1980). The words "holds over possession from the landlord" means "a holding over

after the tenancy has ended. Until then[,] the possession belongs to the tenant, and he is not holding over...and is not guilty of unlawful detainer." *Smith v. Holt*, 29 Tenn.App. 31, 36, 193 S.W.2d 100, 102 (1945).

The question, then, is whether the defendant's tenancy ended on or before June 26, when the unlawful detainer complaint was filed in General Sessions Court. We hold that it had not.

The plaintiff's position is that the defendant had been in breach of the rental agreement from the first day she had fallen behind in her payments, and was liable to be evicted at any time. This is not correct.

More than forty years ago, Judge Felts settled this issue in the leading case of *Smith v. Holt, supra:*

"A tenant's failure to pay rent does not terminate or forfeit his tenancy, in the absence of a provision in the lease for such a forfeiture; and where there is such a provision, the landlord must make formal demand of the rent, unless such demand is waived by the lease or by act of the parties."

29 Tenn.App. at 37, 193 S.W.2d at 102.

■ The same case also made it clear that when a month-to-month tenancy has been established, a month's notice of eviction must be given before the commencement of the next month's term. *Id. See also Barnett v. Dooley,* 186 Tenn. 611, 614, 212 S.W.2d 598, 599 (1948). In other words, if the tenancy is month-to-month, and notice of eviction is given in the middle of the month, under the law of Tennessee the tenant has until the end of the following month to vacate the premises—not just thirty days from the date of the notice, as is often assumed. The rule is that the notice "must be given [a month] before the end of the period" where the tenancy is month to month. *Smith v. Holt,* 29 Tenn. App. at 37, 193 S.W.2d at 102. In *Barnett v. Dooley,* for example, the Supreme Court pointed out that where the landlady desired to obtain the property in August, "it was incumbent upon her to give Barnett notice thereof on July 1." 186 Tenn. at 614, 212 S.W.2d at 599.

■ In the instant case, therefore, since the June tenancy had already commenced, the effect of the notice of eviction on June 15 was to give the defendant Smith until the end of the next month, July, to vacate the lot.

The defendant was not, therefore, unlawfully detaining the premises when the unlawful detainer suit was filed on June 26, or when the General Sessions judgment was rendered on July 21.

## II. The Utilities

The plaintiff's counterclaim asserts that the loss of electricity and water to her trailer was a trespass, a breach of the covenant of quiet enjoyment, and amounted to a constructive eviction. We will consider these claims individually.

### 1. Trespass

At common law it was clear that "every unauthorized, and therefore unlawful entry, into the close of another, is a trespass. From every such entry against the will of the possessor, the law infers some damage; if nothing more, the treading down the grass or herbage...." *Daugherty v. Stepp,* 18 N.C. 371 (1835). One reason underlying this rule was a desire to keep the peace. Harper & James, *Torts,* § 1.8 (1956).

■ However, since it is the owner or tenant's right to exclusive possession that is being protected by the action, it is generally held that the invasion of the close be physical and accomplished by a "tangible matter." *Ryan v. City of Emmetsburg,* 232 Iowa 600, 4 N.W.2d 435, 438 (1942) ("noxious odors" not a trespass). *See, e.g., Amphitheaters, Inc. v. Portland Meadows,* 184 Or. 336, 198 P.2d 847, 850 (1948) (no trespass where light from defendant's racetrack reflected on plaintiff's drive-in movie screen).

It does not appear from the trial transcript or the depositions introduced whether or not the plaintiff's manager actually had to enter onto the defendant's rented lot in order to shut off the water and electrici-

ty, but as we understand it the defendant is not seeking damages for some trivial invasion of her lot. Rather, she is seeking to establish that the landlady's act in cutting off the water and power was in itself a trespass.

We do not think this proposition can be sustained for the reason stated in the above-cited cases. If the release of noxious fumes or beams of light onto the lands of another cannot be considered a trespass, we cannot conceive that the absence of electricity or water can be considered as such either. Although defendant cites some forcible entry and detainer cases, *see* Tenn.Code Ann. § 29–18–102, for the proposition that a landlord's removal of a roof or changing of locks was a trespass, *see Price v. Osborne*, 24 Tenn.App. 525, 527, 147 S.W.2d 412, 413 (1940); *Cutshaw v. Campbell*, 3 Tenn.App. 666, 687 (1925), those cases involved an actual entry onto the premises. *But cf. Gass v. Newman*, 38 Tenn. (1 Head) 136, 138 (1858) (enclosure of plaintiff's lands by defendant was a forcible entry and detainer; actual trespass immaterial). The forcible entry and detainer statute, Tenn.Code Ann. § 29–18–102, reads as follows:

(a) A forcible entry and detainer is where a person, by force or with weapons, or by breaking open the doors, windows, or other parts of the house, whether any person be in it or not, or by any kind of violence whatsoever, enters upon land, tenement, or possession, in the occupation of another, and detains and holds the same; or by threatening to kill, maim, or beat the party in possession; or by such words, circumstances, or actions, as have a natural tendency to excite fear or apprehension of danger; or by putting out of doors or carrying away the goods of the party in possession; or by entering peaceably and then turning or keeping the party out of possession by force or threat or other circumstances of terror.

(b) No action for forcible entry and detainer shall lie against any tenant who has paid all rent due for their current occupancy of the premises and who are not in violation of any law nor otherwise in breach of their written lease....

We do not think that the plaintiff was guilty of forcible entry and detainer under the statute simply as a result of turning off the utilities.

### 2. Constructive Eviction

When a landlord disturbs his tenant's possession, rendering "the premises unfit for occupancy for the purposes for which they were demised" or depriving "the tenant of the beneficial enjoyment of the premises, causing him to abandon them," the tenant has been constructively evicted, provided that he "abandons the premises within a reasonable time." *Couch v. Hall*, 219 Tenn. 616, 620, 412 S.W.2d 635, 637 (1967). The tenant has a reasonable time to exercise, the right of abandonment, or eviction is waived. Whether a waiver has occurred is a question of fact. *Id.* at 622, 412 S.W.2d at 638.

In this case, however, the question of whether a constructive eviction occurred is moot because, even assuming that it did, damages accrue only after abandonment. *See Weinstein v. Barrasso*, 139 Tenn. 593, 600, 202 S.W. 920, 922 (1918); 49 Am.Jur.2d, Landlord & Tenant, § 323 (1970). Presumably because the lease in this case was for an indefinite duration, the defendant made no counterclaim for any damages after she quit the property.

### 3. The Covenant of Quiet Enjoyment

In any ordinary lease of realty there is an implied covenant that the lessee will have the quiet and peaceable possession and enjoyment of the leased premises. This means that "the lessee will be protected by the lessor from any interference with his possession by ... any acts of the lessor which will destroy the quiet and beneficial use of the property." *W.E. Stephens Mfg. Co. v. Buntin*, 27 Tenn.App. 411, 416, 181 S.W.2d 634, 636 (1944). Where there is nothing in the lease contract to the contrary, there is no requirement for an actual eviction to occur in an action for damages for a breach of the covenant of quiet enjoyment. *Moe v. Sprankle*, 32 Tenn.App. 33,

40, 221 S.W.2d 712, 715 (1948). As the court stated in the *Sprankle* case, "there occurs to us no reason why a lessee ... should be forced to await eviction by the lessor or surrender the premises, often at great loss, before claiming a breach of the covenant for interference with his use and possession of the premises falling short of total eviction." *Id.* at 41, 221 S.W.2d at 715.

■ As noted earlier in this opinion, the defendant was in legitimate possession of the lot until the end of July, the earliest date at which the notice of eviction could be effective. Shutting off the electricity and water, then, was a clear interference by the plaintiff with the defendant's quiet enjoyment of the premises. Although there was a provision in the lease that utilities could be shut off on a week's notice if rent *or* utility payments were not paid every seven days, the effect of this provision is ambiguous in light of the fact that another written portion of the form was altered to allow monthly rental payments, and is in any event a violation of the covenant of quiet enjoyment if the landlord has not given timely notice to quit. The defendant was in fact paying her electricity bills regularly every week, and it is clear that the only reason electricity and water were shut off was because the rent was in arrears. There can be no question that the provision of electric power and water is vital to the enjoyment of leased premises. The Legislature has required that owners of trailer courts must insure that electricity and water are available to each of the trailers in the court. Tenn.Code Ann. §§ 68–24–107; 68–24–112. It is also significant that the Department of Public Health has set minimum standards for rental properties which require that they have electricity, access to showers and a toilet, and kitchen connections for water, stoves, and refrigerators. Tenn.Admin.Comp. 1200–1–2 *et seq.*

■ This leaves us with the question of damages. The defendant filed a counterclaim for $750. While the proof of her damages is not very satisfactory, we think she has proved damages in the amount sued for. She testified that when the defendant cut off her electricity she lost $75 to $100 worth of food due to spoilage in her refrigerator. She had no way to cook and for the entire period she had to feed herself and her thirteen year old daughter in fast food restaurants at a cost of $15 a day. Without air conditioning the temperature in the trailer rose to over 100 degrees each day and it was impossible to sleep until after midnight. They had no place to bathe, no toilet, no way to clean dishes. The value of the trailer for living purposes was pretty well ruined. This condition lasted from the time the utilities were shut off until the defendant left the premises in early August, a period in excess of fifty days. Taken together, the spoiled food, the expense of eating out, and the harm to the use of the trailer for living purposes clearly amount to more than $750.

The plaintiff is of course entitled to recover $207.27, the amount the defendant was in arrears on June 8. There is no proof of the rental value of the lot for storage purposes after the utilities were cut off, therefore we hold that the plaintiff is not entitled to anything more.

The judgment of the trial court is reversed, and the cause remanded for entry of judgment consistent with this opinion and any other necessary proceedings. Tax the costs on appeal to the appellee.

TODD, P.J., and LEWIS, J., concur.