IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
On-Briefs February 3, 2003

## MASON MANOR APARTMENTS v. TAWANA ANTHONY

**A Direct Appeal from the Circuit Court for Tipton County**
**No. 5591      The Honorable Joseph H. Walker, Judge**

---

**No. W2002-01769-COA-R3-CV - Filed March 4, 2003**

---

Appellee, a privately owned, government subsidized apartment complex, filed an unlawful detainer action seeking to evict Appellant for numerous infractions of the lease. On the same day that the action was filed, Appellee had given Notice to Vacate to Appellant. The Notice to Vacate gave Appellant thirty (30) days to vacate the apartment. The General Sessions Court of Tipton County and the Circuit Court of Tipton County, on appeal, entered judgment for possession in favor of Appellee. Appellant appeals on the basis that the unlawful detainer action was filed prematurely in light of the additional thirty (30) days given by the Notice to Vacate. We reverse and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Mary C. Mayham, Covington, For Appellant, Tawana Anthony

T.D. Forrester, Covington, For Appellee, Mason Manor Apartments

### OPINION

Mason Manor Apartments ("Mason Manor," "Appellee," or "Plaintiff") operates a government-subsidized housing complex located in Mason, Tennessee. The complex is managed by Abbey Cross ("Ms. Cross").[1] In 2000, Tawana Anthony ("Ms. Anthony," "Appellant," or "Defendant") entered into a written one-year lease agreement with Mason Manor. The leases are renewed every year and Ms. Anthony's lease was renewed on February 14, 2001 and again on February 8, 2002.

---

[1] As of the date of trial, July 1, 2002, Ms. Cross had served as the resident manager of Mason Manor for six (6) years, except for a period from April-October 2001.

The Dwelling Lease dated February 8, 2002 (the "Lease") was effective at the time of trial and provides, in pertinent part, as follows:

9.  RULES AND REGULATIONS:
The OCCUPANCY RULES AND REGULATIONS attached hereto form an integral part of this lease. Failure to abide by these RULES AND REGULATIONS is cause for termination of tenancy.

10.  OCCUPANTS:
The premises will be occupied by the following persons:

| Name | Age | Sex | Relationship |
|------|-----|-----|--------------|
| Tawana Anthony | 24 | F | Self |
| De'Vante Muguire | 9 | M | Son |
| Tyrone Brewer | 5 | M | Son |

Tenant may be permitted to have a guest(s) visit their household. However, an adult person(s) making recurring visits or one continuous visit of 14 days and nights in a 45-day period without consent of management will be counted as a household member(s).

\*                                   \*                                   \*

18.  OBLIGATIONS OF THE TENANT:
The tenant agrees that the attached RULES AND REGULATIONS are his/her obligation and responsibility.
I agree I must immediately notify the (landlord or cooperative) when there is a change in my gross income or persons living in the household. I understand my rent or benefits may be affected as a result of this information. I also understand that failure to report such changes may result in my losing benefits to which I may be entitled or may result in the landlord taking corrective action if benefits were mistakenly received. I understand the corrective action the landlord may take includes the initiation of a demand for repayment of any benefits or rental subsidies improperly received, initiation of a notice to cancel any rental assistance of Section 8 assistance being received for the balance of my certification period, initiation of notice to increase my monthly rent to $595.00 per month (note rate rent for Plan II projects or 125 percent of rent in Plan I projects), or initiation of a notice of termination. I understand that one or more of these remedies may be initiated at the option of the (landlord or cooperative).

During her tenure at Mason Manor, Ms. Anthony received approximately ten (10) Notices of Infraction.[2] These Notices were for a number of different violations, including "failure to maintain unit in a clean and sanitary condition,"[3] "alteration or addition to property not authorized by Landlord or his agent in writing."[4] Ms. Anthony was also consistently cited with the violation of "allowing unauthorized persons to live in the unit." Allegedly, Ms. Anthony allowed her paramour, Willie Byrd, to live in the apartment without the consent of the management. In addition, the police were called to the Mason Manor on September 2, 2001 due to a domestic disturbance between Ms. Anthony and Mr. Byrd. This incident led to another infraction, "unlawful activities causing police action on the property."

Following the September 8, 2001 Notice of Infraction, Ms. Anthony was issued a Notice of Termination of Lease: Non-Compliance Notice to Vacate (the "First Notice to Vacate"). The First Notice to Vacate listed as the reasons for termination the various infractions noted above. However, this First Notice to Vacate did not specify an effective date for termination of the lease.

Ms. Anthony's apartment was inspected several more times following her receipt of the First Notice to Vacate. Each time, Ms. Cross found the violations, including Mr. Byrd's living in the apartment, unresolved. On April 4, 2002, Ms. Anthony was issued a Notice of Termination of Lease: Notice to Vacate (the "Second Notice to Vacate"). The Second Notice to Vacate gave Ms. Anthony until April 8, 2002 to correct the infractions and informed her of her right to an informal meeting with management to attempt a resolution. Pursuant to this notice, Ms. Cross met with Ms. Anthony and Ms. Anthony's attorney on April 8, 2002. Ms. Cross again informed Ms. Anthony that Mr. Byrd's living in the apartment violated the lease.

On April 11, 2002, a Notice of Infraction was issued to Ms. Anthony for failure to maintain the unit in a sanitary condition. Ms. Anthony was notified that the apartment would be inspected again on April 16, 2002. When Ms. Cross inspected the apartment on April 16, 2002, she found that Ms. Anthony had remedied some of the sanitary issues but that Mr. Byrd was still in the apartment. Another Notice of Infraction was issued. Ms. Anthony was notified that Ms. Cross would return on April 18, 2002 with the district manager, Angie Duncan. On April 18, 2002, Ms. Cross and Ms. Duncan inspected the apartment and found Mr. Byrd there. On April 18, 2002, Mason Police Officer Jason Collins met with Willie Byrd and advised him that "the management wanted to bar him from the premises and warn him for trespassing." Mr. Byrd was arrested for being at the apartment complex on April 30, 2002.

---

[2] These Notices of Infraction were dated 3/8/01, 7/16/01, 8/4/01, 8/25/01, 9/8/01, 11/10/01, 1/11/02, 4/3/02, 4/11/02, and 4/16/02.

[3] Specifically, this violation stemmed from the oven being dirty, and the kitchen ceiling having food "splashed over it."

[4] According to the Notice of Infraction, Ms. Anthony had put up wallpaper in her apartment without obtaining the prior consent of the manager. She was also cited for "marker on wall behind door of small bedroom," and for the smoke detector being unplugged.

On May 1, 2002, Ms. Cross sent a Notice of Termination of Lease: Notice to Vacate (the "Third Notice to Vacate"). The Third Notice to Vacate reads, in pertinent part:

> In accordance with the provisions of the dwelling leased [sic] executed by you as resident of Mason Manor Apartments and Intervest Corporation, Inc. As management, you are hereby notified that said dwelling lease is terminated effective 30 days from the date of this notice.

On the same day, May 1, 2002, Mason Manor filed a Detainer Warrant in the Tipton County General Sessions Court. Ms. Anthony was served on May 2, 2002 and the case was set for hearing on May 22, 2002 in General Sessions, and on this date judgment was entered for Mason Manor.

On June 3, 2002, Ms. Anthony filed a Notice of Appeal to the Circuit Court and a Petition for Writ of Certiorari and Supersedeas.[5] A hearing was set for July 1, 2002. Following that hearing, judgment was entered for Mason Manor.

On July 26, 2002, Ms. Anthony filed a Notice of Appeal and a Motion to Stay Execution Pending Appeal. On August 5, 2002, Ms. Anthony filed a Motion to Proceed In Forma Pauperis, which was granted on August 6, 2002. No order was entered on the Motion to Stay; however, Ms. Anthony is still residing in the apartment.

Ms. Anthony raises three (3) issues for our review as stated in her brief:

> I. Plaintiff/Appellee's Detainer Warrant was filed prematurely and should have been dismissed.
>
> II. The evidence presented at trial was insufficient to support the court's decision that Defendant/Appellant had breached her lease in such a way that eviction was an appropriate action.
>
> III. Appellee was obliged to honor the parties' agreement that gave Appellant the opportunity to cure the alleged violations.

Because we find for Appellant on the first issue, we pretermit discussion of the second and third issues.

### I. Plaintiff/Appellee's Detainer Warrant was filed prematurely and should have been dismissed.

---

[5] The appeal was timely filed, but without a supersedeas bond provided for in T.C.A. § 29-18-128. Although the circuit court issued a writ of certiorari and supersedeas, no bond was required.

Where a tenant "willfully and without force, holds over the possession from the landlord," she is guilty of unlawful detainer. T.C.A. § 29-18-104. The words "holds over possession from the landlord" mean "a holding over after the tenancy has ended. Until then[,] the possession belongs to the tenant, and he is not holding over... and is not guilty of unlawful detainer." *Smith v. Holt*, 193 S.W.2d 100, 102 (Tenn. Ct. App. 1945).

Based on the foregoing, the question before us is whether Ms. Anthony's tenancy ended on or before May 1, 2002, when the Detainer Warrant was filed in General Sessions Court. We hold that it had not. The lease agreement between the parties specifically provides for a termination by the landlord in certain circumstances. The agreement requires notice to be given to the tenant that the tenancy is terminated. The effect of the Third Notice to Vacate, given on May 1, 2002, was to allow Ms. Anthony thirty (30) more days (a full rent payment period) until she had to vacate the premises. By the clear terms of the Third Notice to Vacate, Ms. Anthony had until May 31, 2002 to leave the apartment. Ms. Anthony was not, therefore, unlawfully detaining the premises when the unlawful detainer suit was filed, or even when the General Sessions judgment was rendered on May 22, 2002. *See, e.g., Morrison v. Smith*, 757 S.W.2d 678 (Tenn. Ct. App. 1988).

This case was not ripe for judicial consideration. Accordingly, the judgment of the trial court is reversed and the case dismissed. The Opinion should not be construed to obviate Appellant's obligations under the lease, including payment of rent for the period of occupancy. If procedures are again instituted, we suggest that in the event of an appeal by the tenant, the parties consult the statutes concerning bond requirements in tenant's relinquishment of possession of the property. *See Ammons v. Coker*, 124 Tenn. 676, 139 S.W. 732 (1911); *see also Newport Housing Authority v. Ballard*, 39 S.W.2d 86, 90 (Tenn. 1992). Costs of the appeal and the costs in the trial court below are assessed against the Appellee, Mason Manor Apartments.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.