IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 19, 2004 Session

## KOKOMO GRAIN CO., INC. v. RANDY COLLINS, ET AL.

**Appeal from the Chancery Court for Franklin County**
**No. 16,951      Walter C. Kurtz, Judge**

No. M2003-00376-COA-R3-CV - Filed March 26, 2004

This is a dispute between the former tenant of a grain storage facility and the new owners of the premises who acquired the property at a foreclosure sale. The issues in dispute are whether the tenant was a bailor or a holdover tenant following foreclosure and the fair market storage or rental value of the premises. The trial judge ruled that the former tenant was a holdover tenant and that the previous rental rate was the fair market rental value for the holdover period. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and WILLIAM B. CAIN, J., joined.

Jerre Michael Hood, Winchester, Tennessee, for the appellants Randy Collins and Jerre M. Hood.

Stephen M. Worsham, Tullahoma, Tennessee, for the appellee, Kokomo Grain Co., Inc.

### OPINION

This is a dispute between Kokomo Grain Co., Inc., the tenant of a grain storage facility located in Franklin County, Tennessee, and the new owners of the premises, Randy Collins and Jerre M. Hood, who purchased the real estate at a foreclosure sale.

Kokomo entered into a written lease agreement on September 1, 2000 with the then-owners of the premises. The lease agreement was for a six-month period, with an option to renew for an additional six-month period under the same terms and conditions. The rental payment was $1,500 per month, payable in advance. The use of the premises was to be for grain storage by Kokomo and for no other purpose. The landlord supplied only the facility. No services were provided. Particularly, the landlord was not operating a commercial grain facility; it was simply leasing the premises to Kokomo and rendering no other services. Kokomo was responsible for providing the equipment and personnel for loading and unloading its grain.

After the initial term, the lease was renewed on two occasions for additional six-month periods, pursuant to the agreement between Kokomo and the previous owners. During a renewal term the then-owners experienced substantial financial difficulties and defaulted on the mortgage. As a result, the property was sold at foreclosure on December 10, 2001 to appellants, Jerre M. Hood and Randy Collins. Kokomo was informed of Hood and Collins' purchase of the property on the day of foreclosure. A few days later Kokomo was informed verbally that a different rental charge would be required.

The deed from the trustee at foreclosure was not recorded until December 31, 2001. On January 2, 2002, Hood and Collins submitted a letter to Kokomo outlining proposed rental conditions and charges which provided for substantially increased payments from $1,500 per month to $6,500 per month with such charges to be retroactive to December 10, 2001, the date of the foreclosure sale. A second letter dated January 7, 2002 was submitted by Hood and Collins to Kokomo. This letter acknowledged receipt of the January rental payment of $1,500 from Kokomo but advised Kokomo that the rent payment was unacceptable. Neither letter contained a notice to vacate or any notice of termination of the lease. Negotiations took place but did not result in an agreement.

Following receipt of the second letter, Kokomo commenced efforts to remove the grain from the facility. Such efforts were thwarted when Hood and Collins, claiming a warehouseman's lien, caused the Franklin County Sheriff's Department to block Kokomo's access to the grain facility and precluded Kokomo from removing the grain. Following further unsuccessful negotiations and further efforts by Hood and Collins preventing Kokomo from removing the grain, Kokomo filed this action and provided a $25,000 bond whereupon Kokomo was allowed to resume removal of the grain on the condition that the bond remain in effect and that Collins be present at all times the grain was being removed. The last of the grain was removed on March 27, 2002.

Hood and Collins stated five issues; however, their issues are in-artfully framed, are more argumentative than informative and are somewhat redundant. Accordingly, we found it necessary to re-frame the issues. Following a review of the record, it appears that there are two issues worthy of discussion: (1) following the foreclosure, was Kokomo a bailor of grain or a holdover tenant; and (2) if Kokomo was a holdover tenant, does the evidence preponderate against the trial judge's findings as to the fair market rental value of the property.

This matter was tried by the judge without a jury. Accordingly, our standard or review is *de novo* upon the record of the trial court, accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). Conclusions of law by the trial judge carry no presumption of correctness. We are to make our own determination concerning the legal issues. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996).

For purposes of the issues on appeal, the pertinent legal issue decided by the trial judge was that Kokomo was a holdover tenant, not a bailor of grain, and the pertinent findings of fact by the trial judge, which are paraphrased for brevity, include the following:

1.	The lease was entered into well after the mortgage.  The deed of trust was recorded in 1978.

3.	Title to Hood and Collins did not pass until December 31, 2001.  Hood and Collins had no right to the rent prior to that date.

5.	Kokomo acted appropriately in its efforts to remove the grain, and given the actions of Hood and Collins, the grain was removed in a reasonable time.  Hood and Collins are entitled to rent at the fair market value of the property for January, February and March 2002.

7.	The fair rental value of the property in question is $1,500 per month.  Kokomo presented evidence that this amount was the fair market value.  Hood and Collins presented a great deal of evidence related to storage fees for grain stored at a fully operational grain elevator that was inapplicable for Hood and Collins were not operating a grain storage facility.

8.	Kokomo removed the grain within a reasonable time, but even if it did not, Hood and Collins are not entitled to lost profits.  Mr. Collins' testimony that he was prepared to make a major grain purchase in December 2001 is simply not credible.

11.	The relationship between Hood and Collins and Kokomo was that of landlord and tenant, not warehouseman and bailor.

Hood and Collins argue that the foreclosure terminated the lease, and therefore Kokomo was a bailor of grain following foreclosure and should be obligated to pay the customary fee for storage of grain at an operating grain storage facility.  Indeed, the lease was terminated upon foreclosure for the mortgage was recorded prior to the lease agreement, and therefore the lease was subordinate to the mortgage.  However, termination of the lease does not necessarily make Kokomo a bailor of grain nor liable for customary storage charges.

The argument that Kokomo became a bailor because the foreclosure sale terminated the lease fails for two reasons.  First, Hood and Collins were not operating a grain storage facility.  Therefore, evidence that the appropriate storage fee charged by an operating grain storage facility would be $6,500 was inapplicable.  Second, while the foreclosure terminated the lease, it did not make Kokomo a bailor, because the deed of trust provided that in the event of foreclosure any person in possession shall become a tenant holding over and their rights to the premises shall be determined in accordance with law applicable to tenants holding over.  Hood and Collins obtained their rights to the property pursuant to the deed of trust which provides that Kokomo will be deemed a holdover tenant in the event of foreclosure. Accordingly, Kokomo became a holdover tenant following foreclosure and the recording of the deed on December 31, 2001.

Having determined that Kokomo is a holdover tenant, we now examine the second issue, the consideration to be paid by the holdover tenant. The lease specified a monthly rent of $1,500. To increase the rent on a holdover tenant in Tennessee, there must be reasonable notice. *Russells Factory Stores, Inc. v. Fielden Furniture Co.*, 232 S.W.2d 592, 593 (Tenn. Ct. App. 1950). Reasonable notice of a definite demand is required, and reasonable notice in a month-to-month tenancy is considered one month. *Morrison v. Smith*, 757 S.W.2d 678, 681 (Tenn. Ct. App. 1988). Hood and Collins did not give notice until January 2002, which notice did not require Kokomo to vacate the premises. It recommended new terms and conditions including a dramatic increase in rent, or storage charges, of $6,500 per month.

In *AHCI, Inc. v. Lamar Advertising of Tennessee, Inc.*, 898 S.W.2d 191 (Tenn. 1995) the court ruled against a new landlord who attempted to increase the rent six-fold over the previous lease agreement.[1] Like here, the holdover tenant in *AHCI* did not agree to the proposed rent increase, and the parties negotiated unsuccessfully for a period of time and never came to an agreement. After two and one-half years of negotiations failed, the landlord filed suit and demanded that the unilaterally increased rent be paid retroactively. The court ruled in *AHCI* that an unequivocal demand by the landlord, as distinguished from a negotiable offer, is necessary, and that the existence of negotiations following the so-called demand for increased rent renders the status uncertain, which precludes the landlord from recovering a unilaterally set rent retroactively. "If we were to hold otherwise, the landlord could insist that it was negotiating a new rental rate in good faith, make an extravagant demand, and then invoke the *Brinkley* rule to secure that demand if subsequent negotiations proved fruitless."[2] *AHCI*, 898 S.W.2d at 195. *AHCI* held that when there are failed negotiations for an increased rent, as distinguished from an unequivocal demand for a specific increase, the holdover tenant is liable for the fair market rental value for the period in which the tenant occupies the premises in accordance with the equitable doctrines of *quantum meruit* or unjust enrichment. *Id.* at 195, *citing Paschall's Inc. v. Dozier*, 407 S.W.2d 150 (Tenn. 1966). Here, the trial court found that Hood and Collins did not make the requisite unequivocal demand and that the parties continued to negotiate after Hood and Collins' letters of January 2 and January 7, 2002. The evidence in the record does not preponderate against that finding. Therefore the *Brinkley* rule does not apply and Kokomo is only liable for the fair market rental value of the premises. Moreover, it would be inequitable to allow Hood and Collins to prevent Kokomo from vacating the premises, as they did on three occasions, continue negotiations and then, when the negotiations failed, deem themselves entitled to receive the extravagant demand retroactively.

Accordingly, we concur with the trial judge's legal conclusion that Kokomo was a holdover tenant, not a bailor. Moreover, we find that the evidence does not preponderate against the trial judge's findings of fact. To the contrary, the evidence substantially supports the trial judge's

---

[1]Two cases were consolidated which involved two plaintiffs. One plaintiff sought to raise the rent six-fold, the other sought to raise the rent twelve-fold. The court ruled against both plaintiffs.

[2]The *Brinkley* rule provides that the tenant by holding over beyond the term, after having been seasonably notified that there will be a specific increase in rent after the term, the tenant becomes liable for the increased rent, notwithstanding his distinct refusal to agree thereto. *Brinkley v. Walcott*, 57 Tenn. 22 (1872).

findings, including the finding that the fair market rental value of the property for January, February and March, 2002 was $1,500 per month. Therefore, we affirm the judgment of the trial court in all respects.

This matter is remanded to the trial court for such proceedings as may be necessary. Costs of this appeal are assessed against the appellants, Jerre M. Hood and Randy Collins.

_____
FRANK G. CLEMENT, JR., JUDGE