IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 10, 2020 Session

**C & C TENN. PROPERTIES, LLC v.
REEVES & REEVES PROPERTIES, LLC**

**Appeal from the Chancery Court for Hamilton County
No. 17-0181  Jeffrey M. Atherton, Chancellor**

—————————————————————

**No. E2018-01488-COA-R3-CV**

—————————————————————

This appeal concerns a legal dispute between a landlord and a commercial tenant.  The trial court found that the landlord, a recent purchaser of the commercial property, had breached the pre-existing lease.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

John P. Konvalinka, John R. Anderson & Joseph W. Dickson, Chattanooga, Tennessee, for the appellant, C & C Tenn. Properties, LLC.

Gary R. Patrick, Elizabeth M. Hill & McKinley S. Lundy, Jr., Chattanooga, Tennessee, for the appellee, Reeves & Reeves Properties, LLC.

**OPINION**

**I. BACKGROUND**

C&C Tenn. Properties, LLC[1] ("C&C") and Reeves & Reeves Properties, LLC ("R&R") are landlord and tenant, respectively, of the commercial property at 2114 Chapman Road in Chattanooga, Tennessee ("Property").  The Property was previously

—————————

[1]C&C is owned 50/50 by Larry Crane and his son, David Crane.  C&C Motors is a sole proprietorship owned by Larry Crane.

owned by Kenneth and Russell Hall ("Halls"). R&R entered into a written lease ("Lease") with the Halls for commercial space to run an automobile repair business, Fixx-A-Dent,[2] starting in 2005. The current Lease was to expire on February 28, 2020.

According to R&R, the Halls had given R&R the potential for extending its occupancy of the space. At one time, R&R had possessed a right of first refusal to purchase the Property. When the Lease was renewed, the Halls did not want to give R&R the right of first refusal; instead, as long as the Lease was not in default, a three-year option to renew was offered. This option was critical to R&R, as the business had spent large sums of its own money to improve the Property. R&R had installed a kitchen with new appliances, blinds and tint for the windows, CAT 5 wiring, an alarm system, a new phone system, and special flooring on the bay floors. During the build-out and renovation, the Halls had also allowed R&R to install, at its own expense, two new signs for the Fixx-A-Dent business. They were red, protruding block-letter signs, one on the front exterior of the building and the other on the side of the building facing John Douglas Road. R&R asserts that the agreement was memorialized with a handwritten note on the Lease signed on July 30, 2014. However, despite the Lease requiring it, the Halls usually had not required any written authorization, and they had always verbally approved requests by R&R.

In July 2016, the Halls agreed to sell the Property to C&C. The Halls provided C&C with copies of the leases with all tenants. R&R's Lease was assigned to C&C, binding C&C to its terms.

It appears that C&C desired to force R&R out of the Property so it could operate a used car business in the Fixx-A-Dent space. C&C took several steps to change the Property. First, C&C removed both Fixx-A-Dent signs that had been previously affixed with the consent of the Halls. These signs were never replaced. An arrow was added to one sign pointing potential consumers away from the Fixx-A-Dent space. The other sign was never replaced in any way. A new sign, advertising a rival repair shop, was put up in its place.

Next, C&C restriped the Property's parking lot[3] and installed a metal railing through the lot preventing direct vehicle access between the two sides of the divided lot. According to R&R, "as [C&C] started putting cars out on the front lawn, in front of suites, and down at the other end of the center, it looked like we were surrounded by a car lot. It took away our visibility." Following these changes to the Property, C&C sent an invoice for maintenance and alteration expenses. The invoice included lawn service fees dating back

---

[2]Fixx-A-Dent and R&R are the same company. Smart Dealer Solutions, a business allowing customers to purchase the equivalent of an extended warranty covering Fixx-A-Dent repairs, also operates out of R&R's office at the Property.

[3]C&C alleged that it owns the parking lot and that the Lease did not grant R&R any rights to it.

to 2013, several years prior to C&C's ownership of the Property.

C&C filed its claim for declaratory judgment pursuant to Tennessee Code Annotated section 29-14-101, *et seq.*, asserting that the Lease is ambiguous and unenforceable. Alternatively, C&C claimed that R&R had breached the Lease. It alleged that R&R had operated another business at the location without authority under the Lease and without permission from C&C. It also contended that R&R had not remitted payment as required under the Lease for maintenance of the lawns and shrubbery and for garbage disposal utilities. C&C additionally argued that R&R had not sought written permission to maintain the "Fixx-A-Dent" signs on the building's façade. C&C claimed that the oral modifications and oral waivers were not binding. According to C&C, if R&R had wanted all the terms to be binding, it could have recorded the Lease with the modifications.

C&C asserted that R&R had given oral notice in 2016 that it desired to terminate the Lease immediately. C&C claimed that it had accepted the termination orally and waived written notice. R&R disputed C&C's assertion and maintained that it had no desire to terminate the Lease and leave the Property. According to R&R, C&C had demanded that it agree to be released from the Lease and go month-to-month.

R&R filed a counter-complaint to assert that C&C had breached the Lease and its duty of good faith, fair dealing, and quiet enjoyment of the Property. R&R argued that because C&C had received the demise of the lessors (transfer of the Hall lease interest), the Lease did not have to be recorded to be binding. *See Lee v. Stanfield,* No. E2008-02168-COA-R3-CV, 2009 WL 4250155 at *12 (Tenn. Ct. App. Nov. 30, 2009) (discussing effect of unrecorded leases. Tenn. Code Ann. § 66-7-101).

At trial, nearly a dozen witnesses provided testimony. David Crane, 50% owner and day-to-day manager of C&C, testified; he stated that he and his wife primarily managed the daily operations. Larry Crane, a 50% owner of C&C and sole owner of C&C Motors, never took the stand. He did sit at the counsel table and his failure to testify and demeanor led the trial court to apply the "missing witness" rule.

The trial court suggested that the "skullduggery" of C&C led it to find in favor of R&R. The court rejected C&C's declaratory judgment claims, finding that the Lease and its amendments were valid, enforceable, and controlling. The court determined that R&R had not breached or defaulted on the Lease, whereas C&C had breached the quiet enjoyment provision of the Lease by denying R&R's customers access to the shop, purposefully misdirecting them to the wrong section of the building, and replacing R&R's marquee signage with one for a competitor who was neither a present nor prospective tenant. The trial court concluded that R&R, by more than a preponderance of the evidence, established a sufficient claim for breach of contract by C&C and that damages resulted from the breach. The court found that R&R was entitled to $27,706.15 in damages plus attorneys' fees.

## II. ISSUES

We restate the issues on appeal as follows:

> i. Whether the trial court erred in finding that C&C's conduct breached the covenants of good faith, fair dealing, and quiet enjoyment of the Property assured in the commercial Lease agreement;
>
> ii. Whether the trial court erred in rejecting C&C's proposed construction of the parties' lease preventing the operation of a separate business, Smart Dealer Solutions; and
>
> iii. Whether the trial court erred in applying the negative inference of the missing witness rule.

## III. STANDARD OF REVIEW

In reviewing findings of fact and conclusions of law, we are bound to conduct a de novo standard of review for the first two issues on appeal. Specifically, "review of findings of fact by the trial court in civil actions shall be *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001).

The issue as to the missing witness rule requires a different standard or review. Here, we are bound to use an abuse of discretion standard when considering the trial court's usage of the rule. In deciding whether the trial court erred in its application of the missing witness rule, we presume the correctness of the decision and will consider the evidence in the light most favorable to it. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011). *Elchlepp v. Hatfield*, 294 S.W.3d 146, 154-55 (Tenn. Ct. App. 2008); *Rice v. Rice*, 983 S.W.2d 680, 685 (Tenn. Ct. App. 1998).

## IV. DISCUSSION

## i. COVENANTS OF GOOD FAITH, FAIR DEALING, AND QUIET ENJOYMENT

C&C asserts that the removal of the preexisting signage was not in fact a breach. It argues that the plain language in the Lease gave it the unilateral right to take the signs down.

The "Signs" clause of the Lease provides that the landlord has an exclusive interest in the "roof, side, and rear walls" of the Property; that R&R could not construct any signs without consent of the landlord; and that the landlord "shall not unreasonably" withhold consent for tenants to build signs.

R&R constructed the signage at issue with the previous landlord's express permission before the term of the current Lease began. C&C knew the signage was there when the building was purchased from the Halls. The plain and unambiguous terms of the "Signs" clause *govern only the construction of new signs,* not the maintenance of preexisting ones. (Emphasis added.). It also forbids a landlord from "unreasonably withholding" permission from R&R to construct new signs. The Lease contains no provision wherein C&C may retroactively deny approval given to R&R by the Halls.

The legal effect of the terms of a lease are governed by the general rules of contract construction. *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013). Our Supreme Court has provided that "[i]n Tennessee, the common law imposes a duty of good faith in the performance of contracts." *Wallace v. National Bank of Commerce*, 938 S.W.3d 684, 686 (Tenn. 1994). The Lease entered into by C&C and R&R is subject to this duty of good faith and fair dealing as are all contracts in this state. Additionally, our Supreme Court provides guidance on interpreting contracts. When the contract is "clear and unambiguous, the literal meaning of the contract controls the dispute, and the language used in the contract is construed using its 'plain, ordinary, and popular sense.'" *West v. Shelby Cnty. Healthcare Corp.*, 459 S.W.3d 33, 42 (Tenn. 2014).

The trial court held that C&C's

> removal of [R&R]'s sign on the front of the building when considered in conjunction with the skullduggery of replacing [R&R]'s sign . . . with a sign for Fixx-A-Dent's competitor w[as] an intentional attempt to deprive [R&R] of its benefit under the Lease-the right to operate a vehicle repair business at the Property-in violation of the implied covenant of good faith and fair dealing. Further, the court finds that C&C's actions represent an effort to force [R&R] out of the Property well

- 5 -

before its lease period expires.

The court specifically observed that "the Lease does not provide that C&C reserves exclusive right to the front of the building." It concluded that R&R "has established, by more than a preponderance of the evidence, an adequate claim for breach of contract. . . ."

In any ordinary lease "there is an implied covenant that the lessee will have the quiet and peaceable possession and enjoyment of the leased premises." *Morrison v. Smith*, 757 S.W. 2d 678, 682-83 (Tenn. Ct. App. 1988). Extending C&C's rights beyond the Lease is not permitted. C&C did not offer proof of a reasonable ground for withholding consent to reinstall the signs that the Halls had expressly permitted to be installed at R&R's cost and that were prominently displayed when C&C bought the building. We affirm the trial court's finding that C&C's actions violated the covenants of good faith, fair dealing, and quiet enjoyment.

## ii. "USE" PROVISION

C&C contends that the sale of extended warranties was in breach of the "Use" clause of the Lease. It argues that the plain language of the Lease restricted R&R's use of the shop to car repair alone. The business practice at issue is providing finance options for the repairs performed at Fixx-A-Dent.

The Lease between C&C and R&R states in the "Use" provision that R&R may exclusively operate an "automobile repair" business. C&C suggests that Fixx-A-Dent must only transport vehicles to and from the store and "physically fix the cosmetic damage." R&R asserts instead that ancillary business practices are allowed under the "Use" provision and that Smart Dealer Solutions is a business that allows customers to purchase the equivalent of an extended warranty that will pay for any future repairs that Fixx-A-Dent can fix.

Tennessee courts focus their attention upon the "ordinary and usual meaning" of the language parties employ in contracts. *Associated Press v. WGNS, Inc.*, 348 S.W.2d 507, 512 (Tenn. 1961). The courts must give contracts "a reasonable construction" that is "most equitable to the parties, and which will not give one of them an unfair or unreasonable advantage over the other." *Securities Inv. Co. v. White*, 91 S.W.2d 2d 581, 583 (Tenn. Ct. App. 1935).

Upon hearing all the evidence at trial, the court determined as follows:

> Smart Dealer Solutions is essentially an extension of the car repair business operated out of the suites leased by [R&R]. Accordingly, the court finds that the operation of Smart Dealer

> Solutions out of the suites is not a breach, as it is not a deviation of the anticipated use of the space as set forth in Paragraph 3 of the Lease.

We, too, are unwilling to constrict the terms of the Lease as C&C would suggest. Our Supreme Court instructs us to give "an interpretation which will accord with the presumed intention of the contracting parties" and not lead to "absurd consequences" by being unrelentingly strict in interpretation. *Gaut v. American Legion of Honor*, 64 S.W 1070, 1075 (Tenn. 1901). We agree that C&C's argument about the Lease's "use" provision is grounded in an overly technical reading that would result in an absurd result. Therefore, we affirm.

### iii. MISSING WITNESS RULE

Finally, we address whether the trial court's application of the missing witness rule was appropriate. The negative inferences drawn from the rule's affects were added to the totality of evidence provided. C&C asserts that applying the missing witness rule was improper and misinformed the trial court's decisions. The missing witness rule provides that

> if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would have been unfavorable.

*Graves v. United States*, 150 U.S. 118, 121 (1893). Our Supreme Court has held inferences about the missing witness are applicable when evidence shows that:

> [1] the witness had knowledge of material facts,
>
> [2] that a relationship exists between the witness and the party that would naturally incline the witness to favor the party, and
>
> [3] that the missing witness was available to the process of the court for trial.

*Delk v. State*, 590 S.W.2d 435, 440 (Tenn. 1979). These three elements are to be strictly construed due to "potentially critical effect[s]" of the rule. *State v. Francis*, 669 S.W.2d 85 (Tenn. 1984).

The first element, Larry Crane's knowledge of material facts, was met, as multiple witnesses testified that he was the primary actor on C&C's behalf. Mr. Crane was evidently present, if not participating in, many of the events that resulted in the lawsuit.

Next, Mr. Crane's relationship with C&C would incline him to favor C&C, as it is owned by Mr. Crane in conjunction with his son. His financial and personal involvement with C&C ties him directly to the party. As one of the owners of C&C, his interests in the case are directly aligned with it. C&C's success or failure is his own success or failure fiscally.

Finally, Mr. Crane was available to the process of the court. The trial court observed that Mr. Crane sat at the counsel's table for C&C for the entirety of the trial. The court specifically noted:

> [T]he testimony of Robert Burchfield and Thomas Moore [was found] to be particularly persuasive and supportive of the positions taken by [R&R].
>
> The testimony of David Crane gave the Court the clear impression that Larry Crane was the driving force of C&C in its dealings with [R&R] and its other tenants. David Crane's deference to C&C Motors throughout trial was less than persuasive, when the owner of C&C Motors, Larry Crane, was sitting right next to him. This was further supported by the testimony of Robert Burchfield, a former tenant at the Property, particularly relating to certain expletive-laden communications coming from Larry Crane.
>
> C&C's choice not to call Larry Crane, particularly in the face of [R&R]'s and other witnesses' assertions concerning his overbearing conduct toward [R&R], its customers, and the other tenants at the Property, speaks volumes. During the course of the trial, it was clear that Larry Crane would have knowledge of the material facts of this case, based on the fact that Larry Crane was present during certain events at issue and had communicated with both Karen Reeves and Mike Reeves regarding the positions of the parties. Further, because Larry Crane is one of the two owners of C&C, a relationship exists between Larry Crane and C&C that would naturally incline Larry Crane to favor C&C. Finally, not only was Larry Crane available to the process of the court, Larry Crane was present at counsel table throughout the entire trial. Therefore, the Court finds "compelling" the failure of C&C to call Larry Crane as a witness. *See Gentry v. Gentry*, No. E2000-02714-COA-R3-CV 2001 WL 839714, at *4 (Tenn. Ct. App. July 25, 2001). Specifically, the court determines that Larry Crane's testimony

- 8 -

would have been adverse to C&C had he been called as a witness. Further, his less-than-cordial demeanor while sitting at the counsel table throughout the trial did not go unnoticed by the Court. As a result, the Court applies the permissible negative inference discussed in the case cited above when considering the positions taken by C&C.

The application of the missing person rule was valid for the case at hand, as C&C's contention is conclusory. Nowhere does C&C explain how the trial court misapplied any of the factors that govern the missing witness rule, and the court applied the law exactly as the case law requires.

Even if the trial court erred, the error was harmless. The imposition of a negative inference against C&C in this case would be inconsequential given the weight of evidence and the narrow scope of the material issues on appeal. We find that the trial court acted well within its discretion to add the inference afforded by the missing witness rule to the totality of evidence considered.

## ATTORNEYS' FEES

R&R requests a finding that it is entitled to recover the attorneys' fees incurred in this appeal. R&R notes that the trial court ruled that the Lease provides the prevailing party "in litigation concerning the Property" may recover its attorneys' fees. Paragraph 22 of the Lease provides:

> If any legal proceeding of any nature should become necessary for recovery of the Premises or for any sum due hereunder, or because of any act which may arise out of the possession of the Premises by either party, the prevailing party shall be entitled to all costs incurred in connection with such action, including reasonable attorney's fees.

This provision broadly provides for the recovery of attorneys' fees in "any legal proceeding of any nature." R&R asks that we remand this matter to the trial court for a hearing to determine the amount of reasonable fees.

"'Courts have consistently held that issues must be included in the Statement of Issues Presented for Review required by Tennessee Rules of Appellate Procedure 27(a)(4)' in order to be properly before this Court." *Gibson v. Bikas*, 556 S.W.3d 796, 810 (Tenn. Ct. App. 2018) (quoting *In re Estate of Burke*, No. M2012-01735-COA-R3-CV, 2013 WL 2258045, at *6 (Tenn. Ct. App. May 21, 2013)). We note that our decision regarding whether to award attorneys' fees on appeal is a discretionary one. *Banks v. St. Francis*

*Hosp.*, 697 S.W.2d 340, 343 (Tenn. 1985); *Young v. Barrow*, 130 S.W.3d 59, 66-67 (Tenn. Ct. App. 2003). An issue may be deemed waived when it is argued in the brief but is not designated as an issue in accordance with Rule 27(a)(4) of the Tennessee Rules of Appellate Procedure. *See ABN AMRO Mortg. Grp., Inc. v. Southern Sec. Fed. Credit Union,* 372 S.W. 3d 121, 132 (Tenn. Ct. App. 2011); *Childress v. Union Realty Co.*, 97 S.W. 3d 573, 578 (Tenn. Ct. App. 2002).

R&R included the request for fees in the index and discussed the issue in the argument section of the principal brief; it emphatically declared that it was "entitled to recover the attorneys' fees it incurred in this appeal." However, it neglected to include attorneys' fees on appeal in the issues section of its brief.

We are sympathetic to R&R and would have made the requested award in view of the fact that the Lease provision before us provides for attorneys' fees in "any legal proceeding of any nature." However, because R&R did not raise the issue of attorneys' fees on appeal in the statement of the issues, we determine this issue to be waived. *See Champion v. CLC of Dyersburg, LLC*, 359 S.W.3d 161, 163 (Tenn. Ct. App. 2011).

## V. CONCLUSION

The judgment of the trial court is affirmed. The case is remanded for further proceedings consistent with this opinion. Costs are assessed to the appellant, C&C Tenn. Properties, LLC.

_____
JOHN W. MCCLARTY, JUDGE